## THYMO BORINE LABORATORY v. WINTHROP CHEMICAL CO., Inc.
### Patent Appeals No. 5129.

Court of Customs and Patent Appeals.

May 7, 1946.

Ira Milton Jones, of Milwaukee, Wis., for appellant.

James F. Hoge and L. B. Stoughton, both of New York City, and E. F. Wenderoth, of Washington, D. C., for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

JACKSON, Associate Judge.

This is an appeal in a trade-mark opposition proceeding wherein the Commissioner of Patents affirmed, 63 U.S.P.Q. 94, a decision of the Examiner of Trade-Mark Interferences sustaining the notice of opposition and adjudging that appellant is not entitled to register its trade-mark "Thy-Rin" as applied to an "antiseptic mouth wash."

In its notice of opposition appellee alleged that the mark "Thy-Rin" as used by appellant is applied to merchandise of the same descriptive properties as a product of appellee to which is applied its trade-mark "Thyractin," Registration No. 301,090, dated February 14, 1933, and that the marks of the parties are of such near resemblance "as to be likely to cause confusion or mistake in the mind of the public" and "to deceive purchasers." The allegations in the notice of opposition were traversed by appellant's answer.

The registered mark of appellee is applied to a "thyroid extract preparation for treatment of goiter, obesity, [and] kindred ailments."

The case was submitted below on a joint stipulation of facts in which it appears that appellee's use of its mark was prior to that of appellant, so that the only issues are whether or not the goods of the parties are of the same descriptive properties, and if it be decided that they are, whether the involved trade-marks are so similar as to warrant the sustaining of the notice of opposition.

It appears in the stipulation that appellee is in the business of manufacturing, distributing and selling many medicinal and pharmaceutical preparations to which many different trade-marks are applied, including "Thyractin" and other preparations for "general antiseptic uses including use as an antiseptic mouth wash;" that its product to which the mark "Thyractin" is applied is in tablet form for oral use with water and is "widely advertised to the drug trade and medical profession" and "extensively sold in drugstores throughout the United States." While usually procured by prescription or as directed by a physician, "Thyractin" may be, and at times is, purchased by the general public without prescription.

The product of appellant as it appears from the stipulation is a germicidal mouth wash which may be used in either diluted

or undiluted form and is sold to the general public in drug, five-and-ten, and department stores. It is advertised to the public chiefly in newspapers. It is frequently used in the treatment of oral conditions such as sore throat, trench mouth and gingivitis on the advice of physicians or dentists where the condition may be such that professional attention is required. It is generally used, however, as an antiseptic mouth wash.

In the stipulation the parties agreed that antiseptic mouth washes are medicinal in character within the meaning of the Federal Food, Drug and Cosmetic Act, 52 Stat. 1040, 21 U.S.C.A. § 301 et seq., and that the medical and dental professions, druggists and pharmacists so regard them.

The Examiner of Interferences held the involved goods of the parties to possess the same descriptive properties within the meaning of the Trade-Mark Act, 15 U.S. C.A. § 81 et seq., because even though specifically different they are in the nature of medicinal products, "at times at least both products are sold in the same trade channels by the same method of distribution, to the same class of customers," and that therefore there seemed to be a likelihood that purchasers of the involved goods of the parties might reasonably believe they originated in a common source.

The examiner also held the marks to be confusingly similar. He noted that the mark "Thy-Rin" consists of all the letters of the mark "Thyractin" omitting only the letters "act," and concluded that such omission was not enough to differentiate the marks so as to negative likelihood of confusion.

The reasoning of the examiner was in effect followed, and was approved, in the commissioner's decision.

In our opinion the involved products of the parties are of the same descriptive properties.

It is true, as pointed out in the commissioner's decision, that appellant's mouth wash and appellee's thyroid tablets would in all likelihood "be recognized as different preparations adapted for different uses" and that as far as their specific natures are concerned confusion would be unlikely.

However, they are both medicinal or pharmaceutical preparations and appellee, as before stated, produces and sells a large number of preparations of that kind, including an antiseptic preparation used as a mouth wash for oral and dental hygiene. In view of the fact that the goods of the parties are both medicinal, may be sold in drugstores without prescription to the same class of buyers, and are self-administered for medicinal effect, we are convinced that they are goods of the same descriptive properties. Noll v. Krembs, 73 F.2d 491, 22 C.C.P.A., Patents, 722.

In comparing the involved marks of the parties, their difference and similarity in sound and appearance are obvious. They are more similar than different in spelling, appearance and sound, and in our opinion there is a strong likelihood that confusion would arise between them in the spoken word, memory and writing. The slight difference in the spelling of the marks appears to be over-shadowed by their close similarities. The hyphen in appellant's mark has no significance in speech. Furthermore, appellant's mark is made up in the same order of the same letters as the involved mark of appellee, except for the omission of three intermediate letters.

While we have repeatedly stated that in trade-mark litigation such as in this case prior decisions are of little assistance, and that each case must be determined on its own facts, we think this Court has been consistent in its opinions with respect to likelihood of confusion between marks when questions similar to that presented here have been decided. In the case of Proctor & Gamble Co. v. J. L. Prescott Co., 49 F.2d 959, 18 C.C.P.A., Patents, 1433, the mark "Oxol" as applied to a disinfectant, cleaner and bleacher and put up in bottles was held to be confusingly similar to the mark "Oxydol" for soap powder in paper cartons; in Barton Manufacturing Company v. Hercules Powder Co., 88 F.2d 708, 24 C.C.P.A., Patents, 982, "Di-shine" for a cleaning compound was held to be confusingly similar to "Dyanshine" used for a polish on leather goods; in Re Dutch Maid Ice Cream Company, 95 F.2d 262, 25 C.C.P.A., Patents, 1009, "Dutch Maid" applied to ice cream was held to be

unregistrable in view of "Dutchland Made" also for ice cream; in Otard, Inc., v. Italian Swiss Colony, etc., 141 F.2d 706, 31 C.C.P.A., Patents, 955, the term "Calognac" for California brandy was held to be confusingly similar to "Cognac" for brandy from the Cognac region of France; in the case of International Vitamin Corp., etc., v. Winthrop Chemical Co., Inc., 147 F.2d 1016, 32 C.C.P.A., Patents, 899, the mark "Blexin" applied to a Vitamin B Complex preparation was held to be confusingly similar to the mark "Betaplexin" for a like preparation. There we observed that the former of those marks might be termed a telescoped version of the latter. The same observation might be made here.

Since in our opinion the involved goods of the parties are of the same descriptive properties and the concurrent use of the marks as applied thereto is likely to cause confusion in the mind of the purchasing public as to origin and deceive purchasers, the decision of the Commissioner of Patents is affirmed.

Affirmed.