44 C.C.P.A. (Patents).

**ARMOUR and COMPANY, Appellant,**

v.

**ORGANON, Inc., Appellee.**

**Patent Appeal No. 6266.**

United States Court of Customs
and Patent Appeals.

June 25, 1957.

———◆———

Carl C. Batz and Frank T. Barber,
Chicago, Ill., for appellant.

Alexander, Maltitz, Derenberg & Daniels, New York City (Walter J. Derenberg and Joe E. Daniels, New York City, of counsel), for appellee.

Before JOHNSON, Chief Judge, and O'CONNELL, WORLEY, RICH and JACKSON (retired), Judges.

JOHNSON, Chief Judge.

This is an appeal in an opposition proceeding from the decision of the Commis-

sioner of Patents, 106 U.S.P.Q. 220, speaking through the Assistant Commissioner, reversing the decision of the Examiner of Interferences which sustained the opposition and which adjudged that applicant (appellee here) was not entitled to the registration sought. The Assistant Commissioner was of the opinion that opposer (appellant here) had not alleged facts in its notice of opposition from which likelihood of damage could be presumed and, accordingly, dismissed the opposition. From this decision, opposer brings this appeal.

Appellant, a manufacturer of medicinal hormone preparations known as "ACTH" (adrenocorticotropic[1] hormone), filed its notice of opposition to the proposed registration of "Cortrophin," applied to the same product, and which was claimed in appellee's application to have been used since May 17, 1949.

Appellant, in its notice of opposition, included the following pertinent allegations:

"1. The opposer, Armour and Company, is the manufacturer of an extensive line of medicinal preparations, its business is an old and established one, and its products have been and are widely sold throughout this country and the principal foreign markets of the world.

"2. Long prior to the date of first use claimed by applicant, namely, May 17, 1949, opposer began to produce and sell medicinal hormone preparations, consisting of ACTH (adrenocorticotrophic hormone), has continuously and extensively sold said preparations since prior to said date until the present time, and is now selling said preparations.

"3. Continuously since a date prior to May 17, 1949, until the present time, opposer has sold medicinal hormone preparations under the generic names 'ACTH', 'adrenocorticotrophin', 'adrenocorticotrophic hormone', and 'adrenotropin', and opposer has also used and is now using the generic name 'corticotrophin' for its said hormone preparations. Two specimens showing how opposer sells its goods are attached hereto, marked 'Exhibit A'.

"4. On information and belief, opposer alleges that other manufacturers of pharmaceutical preparations have used continuously since a date prior to May 17, 1949, and are using at the present time, the generic names 'ACTH', 'adrenocorticotrophin', 'adrenocorticotrophic hormone', 'adrenotrophin', and 'corticotrophin' for their medicinal hormone preparations.

"5. The word 'corticotrophin' is defined in medical and chemical dictionaries as the generic term for 'adrenocorticotrophic hormone'.

"6. The word 'corticotrophin' has been adopted by the United States Pharmacopeia, the American Medical Association Council on Pharmacy and Chemistry, and the World Health Organization as the official generic nomenclature for the medicinal hormone preparation named in applicant's application."

Each of these allegations was admitted by appellee in its answer.

Appellant further contended in its notice of opposition that:

"7. Applicant's alleged trade-mark 'Cortrophin' is a mere contraction, telescoping, or misspelling of the generic name 'corticotrophin', is confusingly similar thereto, and must be considered to be in the same category with 'corticotrophin' as constituting merely the generic or descriptive name of the goods and to be incapable of functioning as a

---

[1]. Throughout this opinion, the suffix "tropic" or the like will be alternately spelled "trophic" and "tropic." Apparently, the practice in the trade has been to so alternate the spellings, at the will of the user. This should explain the apparent inconsistencies between portions of quoted material and our own usage of the terms.

trade-mark or distinguishing applicant's goods from the goods of others and therefore to be not properly registrable under the Trade-Mark Act of 1946 [15 U.S.C.A. § 1051 et seq.] in view of Sections 2 and 2(e) thereof.

"8. Opposer avers that it will be damaged by the granting to applicant of a registration which would constitute presumptive exclusive ownership of a term practically indistinguishable from the generic name of the goods, which name opposer and others in the industry are presently using, and have an equal right to use; and opposer further avers that the registration of applicant's alleged trade-mark will interfere with and embarrass the opposer and other members of the entire pharmaceutical industry *in the exercise of their right to describe their goods by means of the common generic terms for the goods.*" (Emphasis added.)

Appellee, in its answer, denied the latter two allegations and urged that "applicant has no objection to the use of this generic term by opposer or any other person. Hence opposer is not and cannot be damaged by the registration sought by applicant."

Neither party took testimony.

The Examiner of Interferences, on the foregoing set of facts, concluded that "The goods being the same and opposer's priority of use being admitted by applicant, the only issue left is that of confusing similarity of the *marks.*" (Emphasis added.) He then proceeded to hold the two "marks" confusingly similar and denied appellee's registration.

The Assistant Commissioner, due no doubt to the examiner's inadvertent use of the word "marks," held that the examiner had "erroneously treated the case as one involving two trade-marks" and stated that

"Confusion, mistake or deception of purchasers is not the issue here, since applicant's 'Cortrophin' is in fact 'corticotropin' (adrenocorticotropin). The issue, it seems to me, is whether or not the applicant's registration of 'Cortrophin,' with the presumptions flowing from such registration, is likely to damage opposer."

The Assistant Commissioner then noted that

"Both parties, and others in the industry use adrenocorticotropin, corticotropin and adrenotropen—indeed, judicial notice is taken of the fact that they are required by the Federal Food, Drug and Cosmetic Act to use one of the recognized generic designations for the adrenocorticotropic hormone, (sic) This being true, it is not seen how registration of 'Cortrophin' by applicant can possibly 'interfere with and embarrass the opposer and other members of the entire pharmaceutical industry in the exercise of their right to describe their goods by means of the common generic term for the goods' as alleged by opposer in its pleading."

Thus, on the face of the record, it would appear that the single issue on appeal relates to appellant's standing in this opposition proceeding, viz—is there a likelihood of damage to appellant from the proposed registration of appellee's "Cortrophin." It is rather obvious, however, that the only possibility of damage to appellant would reside in the correctness of its allegation that "Cortrophin" is, in fact, descriptive of the product in conjunction with which it is used (assuming for the moment that if "Cortrophin" were descriptive, appellant would be likely to be damaged by the registration thereof). It is necessary, therefore, to consider at this point the question of descriptiveness of "Cortrophin" (or, as appellant states it, the "confusing similarity of "Cortrophin" to the generic term "corticotrophin"). If, in fact, the mark is not descriptive, it is clear that the decision of the Assistant Commissioner must be affirmed.

There was no clear decision in the opinion below with respect to the question of descriptiveness. We are of the opinion that "Cortrophin" is not a "*mere* contraction, telescoping, or misspelling" of the generic name "corticotrophin," as alleged by appellant in its notice of opposition; that it accordingly is not "in the same category" with that name and does not constitute the generic or descriptive name of the goods; that it is therefore capable of functioning as a trademark and distinguishing appellee's goods from the goods of others; and that it is accordingly properly registrable under the Trade Mark Act of 1946.

Comparison of the two words readily justifies our conclusion. The word "Cortrophin" has only three syllables, whereas "corticotrophin" has five. The latter, due to the inclusion therein of "tico," would unquestionably be aurally distinct from the former. The two terms differ in appearance as well. Furthermore, we cannot ignore the fact that the goods to which the mark is applied are prescription drugs. Where such products are involved, the likelihood of confusion between the mark and the descriptive term is unquestionably minimized.

It must, as well, be borne in mind that we are here concerned not with two arbitrary or fanciful marks but with a descriptive term and a term alleged to be a "mere" misspelling thereof. As was ably stated by Judge Worley in Intercontinental Mfg. Co., Inc. v. Continental Motors Corp., 230 F.2d 621, 623, 43 C.C.P.A. Patents, 841:

> "Normally, the degree of similarity which is permissible between trademarks consisting of ordinary words, *especially when such words are descriptive* or geographical, is greater than that permissible between arbitrary or fanciful marks. * * *" (Emphasis added.)

How, then, can it be said that "Cortrophin" is a "mere" contraction, telescoping or misspelling of "corticotrophin"? In our view, while appellee's "Cortrophin" is not completely arbitrary, having its roots in the generic term, it is sufficiently different from said generic term to avoid the evils inherent in the registration of a descriptive term. It is, at best, merely suggestive of the generic term.

It is to be noted that, in our determination of whether or not "Cortrophin" is a mere misspelling, contraction or telescoping of the *generic* word "corticotrophin," we have given weight to considerations normally made where *two trademarks* are involved and the question is one of confusing similarity of the *marks* as applied to the goods in question. From our study of the cases on this question we have concluded that the test which must be made in each case is similar to that made in the other. Cases such as Selchow v. Baker, 1883, 93 N.Y. 59; Ex parte Pillsbury Flour, 1935 C.D. 1, 23 U.S.P.Q. 168; Canal Co. v. Clark, 1871, 13 Wall. 311, 20 L.Ed. 581; and Model Brassiere Co., Inc., v. Bromley-Shepard Co., Inc., 49 F.2d 482, 18 C.C.P.A.,Patents, 1294, indicate that amongst the reasons for the statutory proscription of the registration of descriptive words are (1) to prevent the applicant from acquiring a monopoly in the sale of any goods other than those produced or made by himself, and (2) to avoid the possibility of harassment by the registrant of the descriptive term, by means of threats of infringement suits and the like, of others in the field who use the descriptive term to describe their products (this latter possibility arises from the fact that, under section 7(b) of the Trade Mark Act of 1946, the registration of a mark is prima facie evidence of the ownership of and the exclusive right to use the mark). Where one attempts to register a "mark" which is a mere misspelling or contraction of a descriptive term, it is evident that the foregoing evils which are inherent in the registration of a descriptive word do not cease to exist. The registrant of the misspelled descriptive word will nonetheless be in a position to badger users of the descriptive word per se with threats

of infringement suits; and this situation will persist so long as the registrant is in a position to say that the use of the descriptive term by others, concurrently with his use of the registered mark, is likely to cause confusion in the mind of the public as to the origin of the goods. The question in each case thus reduces itself to a determination of whether the proposed mark is so similar to the descriptive term as to result in the likelihood of confusion as between said mark and the descriptive term per se.

Appellant attempts to draw an analogy between numerous cases which have considered proposed registrations which were alleged by an opposer or a petitioner to be "mere" misspellings or contractions of generic or descriptive terms to show that appellee's "Cortrophin" is a "mere" misspelling or contraction of the generic term "corticotrophin." As has been pointed out above, the determination of whether or not "Cortrophin" is descriptive resolves itself essentially into a question of confusing similarity between said mark and the descriptive term "corticotrophin." Thus, the final determination is unavoidably subjective. In such a situation as this, therefore, prior decisions are of little value. Cf. L. J. Mueller Furnace Co. v. United Conditioning Corp., 222 F.2d 755, 42 C.C. P.A., Patents, 932.

Appellant finally contends that due to the fact that the term "Cortrophin" is extremely suitable for use as a generic name for the product, "there is every likelihood that it will be desired as the generic name for the product." It states that "no one is entitled to seize upon words or phrases which are particularly suited for use as the future generic terms for the products and make use of such words and register them to the exclusion of everybody else in the field." Such an argument is too tenuous to require extensive discussion. We agree with the Assistant Commissioner that we "may not indulge in surmise concerning what the facts may be at some remote and indefinite time in the future or what the result of such changed facts might be."

In view of our finding that appellee's "Cortrophin" is not descriptive, there is no need to consider the question of appellant's standing in this opposition proceeding. As we have heretofore stated, unless it could be shown that the mark is in fact descriptive, appellant could not possibly show likelihood of damage flowing to it as a result of the proposed registration.

For the foregoing reasons, the decision of the Assistant Commissioner is affirmed.

Affirmed.

JACKSON, J., retired, recalled to participate herein in place of COLE, J., absent because of illness.

RICH, Judge (concurring).

I concur in the result reached by the majority but I do so for my own reasons, which I here set forth.

Although the Examiner of Interferences erroneously said in his opinion that "confusing similarity of *marks*" was the issue, he was not confused in fact. Later on in his opinion he said,

"It is noted that applicant argued that said decided case [Thymo-Borine v. Winthrop, 69 U.S.P.Q. 512] and the other cases listed by opposer * * * involved registrations, which is not the case here."

He then said:

"In principle, Examiner can see no distinction here as drawn by applicant; namely, between the situations involving registered marks and coined marks, on the one hand, and a generic term and a coined term on the other. In this regard, Examiner appears to be amply supported by the Thymo-Borine and Otard cases, supra."

He concluded by saying:

"Summarizing, then, it is Examiner's position that the generic term Corticotrophin and the coined term

Cortrophin are too close in sound, appearance and meaning to avoid confusion. It is concluded, therefore, that the contemporaneous use of the parties' terms on their identical goods is likely to result in confusion."

I set this forth because both the majority opinion and the Assistant Commissioner seem to underrate the perspicacity of the Examiner of Interferences and for the further reason that the examiner has put his finger on a point which seems never to have been adequately dealt with in the texts or cases and which I think needs analysis, viz. is there a distinction between the two situations to which the examiner referred? I wish to deal with this point because I think it has an important bearing on the problem of reaching the correct conclusion in a field where the law is rather confused.

The considerations which prevail where an applicant seeks to register a mark differing from but resembling a *descriptive* term are not quite the same as those involved where an applicant's mark resembles another's arbitrary trade-mark.

When the owner of an arbitrary trade-mark opposes the registration of a differing but similar mark he is trying to protect an *exclusive* right, possibly of great value to him, a right which brings trade to his door and in which no one else has any interest.

One who opposes the registration of a purely descriptive term which he is using or has the right to use in his business (which gives him the right to oppose) is merely trying to prevent the encroachment of a claim of exclusive ownership on his right, which he holds in common with others, to the free use of the language, including all accepted technological terminology, which is constantly evolving. Such a right is not his exclusive property. It belongs to him only as a member of the public. It is not a right which brings him any trade. It has no direct economic value to him. His right to freedom in the use of the language is simply the right to be free from claims of exclusive right by others and from harassment based on such claims which may burden him with litigation expense. See, for example, what happened in Battle Creek Food Co. v. American Pharmaceutical Co., Inc., D.C., 5 F.Supp. 959. For these reasons the statute proscribes the registration of "merely descriptive" terms (Sec. 2(e) ).

When we come to consider alleged marks which are not themselves purely descriptive terms, but which are marks which differ to a greater or lesser degree from such terms, as in the present case, it should be remembered that the issue of "confusing similarity" is not one, the decision of which involves such matters as palming off, dilution of trademarks, getting a free ride on another's goodwill and like considerations with which we are concerned where two confusingly similar, non-descriptive, arbitrary marks are involved. All we are really concerned with is the prevention of harassment by an attempted monopolistic withdrawal of terms from the public domain by means of a registration.

Because of this difference in the two situations, we should be careful not to apply rules appropriately developed with respect to the encroachment on privately owned arbitrary marks to the determination of the unrelated question of what degree of similarity to words in the public vocabulary renders them unregistrable as descriptive, unless such rules are clearly applicable.

In opposing the granting of a registration, all an opposer can do is try to convince the Patent Office, or the courts, that the granting of the registration would be contrary to the statute, which lays down the terms on which registration may be obtained. In this case, for example, the opposer must show that "Cortrophin" is "merely descriptive" and in my view the only issue before us is whether or not it is. The only word we have to compare it with, on this issue, is "corticotrophin," the closest in sound and appearance of the several descriptive

terms used on the product for which applicant seeks registration of its mark.

Words in the language are used in two ways, written and spoken. Substantial identity in either appearance or sound between the alleged mark and the name of the product would clearly make the mark descriptive and hence unregistrable. I see no such substantial identity here. The two syllables "ti-co," omitted in the mark, are adequate to differentiate it from the descriptive name both visually and aurally. The remaining question is whether they *sufficiently* differentiate, on either score, to escape the "merely descriptive" proscription of the statute, bearing in mind its purposes. I think they do.

To dispose of one question, I feel that the undoubted fact that "Cortrophin" is highly suggestive of the product corticotrophin, so that it would lead informed people to surmise that that is what it is, is immaterial on the issue of mere descriptiveness. As Judge Bland of this court said many years ago in one of the "Chicken of the Sea" cases, Van Camp Sea Food Co. v. Alexander B. Stewart Organizations, 50 F.2d 976, 18 C.C.P.A., Patents, 1415, 1420, ofttimes the best trademarks are highly suggestive. Next, I do not belive that the registration of the contraction "Cortrophin," produced by the omission from the product's name of the prominent syllables "ti-co," would in any way tend to withdraw a word from the language or, realistically, would be likely to give rise to any harassment. "Cortrophin" is not the descriptive name of anything. No attorney in his right mind would use its registration to threaten a user of the firmly established, previously used and officially recognized descriptive term corticotrophin. One argument the opposer has presented is that "Cortrophin" *would* be a suitable name for the product. This does not have the slightest persuasive effect, at least on me, that it is descriptive in any way. And finally, admitting that the difference produced by the omission of "tico" from the name is small, both visually and aurally, I can see no

reason why, for the reasons stated above, a small difference is not enough of a departure from an established *descriptive* name to avoid any likelihood of damage to one basing his claim solely on the right to use the descriptive name. If "corticotrophin" were a valid trademark instead of a descriptive term, I would hold the other way without hesitation. I would do so because there are real and logical reasons for protecting the private property in a trademark with a wider moat or a higher fence than is required to be built around the publicly owned descriptive word, the name of the product. I observe a distinction in this respect in the statute itself which in Sec. 2(d) forbids registration of a mark which so resembles *a mark or trade name* previously used by another as to be likely, when applied to the same goods, "to cause confusion or mistake or to deceive purchasers," whereas in Sec. 2(e) the proscription is against registering a "merely descriptive" mark without any such qualification as the above quoted clause in Sec. 2(d).

It is also well known that "strong" trademarks are given greater protection against encroachment than "weak" ones. Marks become progressively weaker as they approach the descriptive. When the point of absolute descriptiveness is reached, property right in the word vanishes completely and the only thing left for protection is the right of the public to the free use of the descriptive word or name itself. Hence its registration is prohibited, together with words which are *substantially the same* in either appearance or sound. Private interests are not involved and I see no reason for going further to protect the public interest.

For the foregoing reasons I would affirm.

WORLEY and JACKSON, Judges (dissenting).

In our opinion appellee's "Cortrophin," obviously a mere elision of corticotrophin, is still so descriptive as to be unregistrable.