45 C.C.P.A. (Patents).

**WHITEHALL PHARMACAL COMPANY, Appellant,**

v.

**Frances DENNEY, Appellee.**

**Patent Appeal No. 6316.**

United States Court of Customs and Patent Appeals.

May 23, 1958.

Mortimer Altin, New York City, for appellant.

Mock & Blum, New York City (Asher Blum, New York City, and Charles R. Allen, Jr., Washington, D. C., of counsel), for appellee.

Before JOHNSON, Chief Judge, and O'CONNELL, WORLEY and RICH, Judges.

RICH, Judge.

This appeal is from the decision of the Commissioner of Patents dismissing opposition No. 32,695.

Application serial No. 639,212 was filed December 9, 1952, by Frances Denney, a Pennsylvania corporation, seeking to register the mark "Hope" for perfumes and toilet waters, alleging use since October 7, 1952.

Registration is opposed by the Whitehall Pharmacal Company by virtue of prior use of "Hope" by it and its predecessor and registration No. 311,584, granted March 27, 1934, of "Hope" as applied to laxatives and denture suction powders. The original registration by Hope, Inc. was renewed in 1954 by opposer.

The Whitehall company bought the entire assets of Hope, Inc., and by virtue of that acquisition became the owner of the involved registration. Both Hope, Inc. and the opposer, Whitehall, have used the mark "Hope" on denture cleaners [1] and denture suction powders. From 1929 to 1953 total sales of the denture products amounted to $1,022,010 and advertising expenditures since 1939 have amounted to more than $45,000.

Appellee emphasizes that its products are *high priced* [2] cosmetics including such items as creams, rouge, lipstick, cologne, toilet water, and other perfumed items. The manner of selling these Frances Denney products was given great weight in appellee's brief and by the Commissioner. It appears that 90 to 95% of the retail sales are made by "Frances Denney girls" at "Frances Denney counters," placed strategically in large department stores. This arrangement of Frances Denney girls and separate counters is contrasted with the ordinary drug counters where "Hope" denture products are merchandised. We are not impressed by the argument that current retail store merchandising methods should be con-

[1]. The Examiner of Interferences ruled out consideration of "denture cleanser * * in this proceeding for any purpose" because it was "not among the goods specified by opposer in its notice of opposition." He was in error in this as the notice refers to attached exhibits "showing the mark as used by opposer," one of which is the label of opposer's "Hope Denture Cleanser."

[2]. Perfume at $5.00 the quarter ounce, toilet "essence" $2.75 for two ounces. In the testimony the following appears: "Q. Will you explain * * * the difference between toilet essence and toilet water? A. There is none, essentially."

trolling on the issue of the possibility that purchasers may be confused as to the origin of goods.

The Commissioner said that consideration should be given to the "probable psychological impact" of the mark in the surroundings in which the goods are sold, and attaches great weight thereto. While it may be a factor, we feel it should not be given controlling significance since these practices might change at any time.

Appellee also makes the point that a Frances Denney product is a "luxury or gift" item as contrasted to opposer's "necessity item." We are unable to see how this is a factor of much importance in eliminating the possibility of confusion as to *origin*. Not only may prices be changed at the whim of the manufacturer, but it is common for a single maker to sell both luxury goods and necessary commodities.

It appears from the record that certain large drug houses, Whitehall among them, follow the general practice of manufacturing a variety of products and applying a different trademark to each product. Whitehall manufactures and sells drugs, cosmetics and toiletries, such as rouge, lipstick, perfumed deodorizers, stick cologne, solid perfume, hand lotions, creams, and toothpaste and a different mark appears to be applied to each. The record refers to other large drug houses, the products they offer and shows that they apply different marks to different items.

The argument to which the Patent Office apparently attached most weight is based on the above practice of certain large drug houses which it was thought had probably conditioned the minds of purchasers. Appellee urges that this trade practice makes confusion unlikely. We very much doubt, however, that the purchasing public is even aware of the practices of certain large drug houses and we feel it is highly improbable that its collective mind has been conditioned in the respect assumed.

██ It is our view that prospective purchasers might well assume, upon seeing the mark "Hope" on perfumes or toilet waters, that the maker of "Hope" denture products was in some way connected with these items. Identical marks in fields as closely related in trade as over-the-counter dental products, perfumes and toilet water would, we think, be likely to give the impression of common origin. This is not a case of likelihood of confusion between similar marks used on identical goods where a purchaser of perfume, for example, might be made so discriminating by foreknowledge of the precise brand desired or by the high cost of the merchandise as to preclude likelihood of confusing one brand with another. The simple question is whether purchasers of "Hope" perfume or toilet water (cologne) were being marketed by the purveyors of denture products bearing the identical mark.

On the whole record, we do not see how the question whether purchasers will be likely to be confused or mistaken as to origin can be free from doubt. Any such doubt should be resolved against the newcomer. F. Jacobson & Sons, Inc., v. Jaybern Fabrics, Inc., 195 F.2d 926, 39 C.C. P.A., Patents, 937 and cases there cited.

We believe the opposition should have been sustained and the decision of the Commissioner of Patents is reversed.

Reversed.

WORLEY, Judge (concurring).

I concur with the majority solely on the ground that any reasonable doubt should be resolved against the newcomer.

JOHNSON, Chief Judge (dissenting).

I respectfully dissent from the decision of the majority.

At the outset, it is important to note that this case involves the opposition of the registration of "Hope" for *perfumes and toilet water* by the owner of the mark "Hope" for *laxatives, denture suction powders and denture cleanser*. It is immaterial what other products are manufactured under different marks and the statements in the majority opinion about other goods have no place in this case.

The essence of the majority opinion resides in the conclusion that

" * * * prospective purchasers might well assume, upon seeing the mark 'Hope' on perfumes or toilet waters, that the maker of 'Hope' denture products was in some way connected with these items. Identical marks in fields as closely related in trade as over-the-counter dental products, perfumes and toilet water would, we think, be likely to give the impression of common origin. * * * "

Unless the majority is of the opinion that denture products on the one hand and perfumes and toilet water on the other are so closely related *in the public mind* that the public would think that the manufacturer of the former item had expanded his business to cover the latter, it is difficult to see how its decision can be justified. The majority, however, in answer to the argument that the practice of large drug houses is to apply different trademarks to its different products, replied:

" * * * We very much doubt, however, that the purchasing public is even aware of the practices of certain large drug houses and we feel it is highly improbable that its collective mind has been conditioned in the respect assumed."

It would seem that this answer would, with equal logic, apply to the essence of the majority opinion heretofore set forth. It is highly doubtful that the public is aware that large drug houses manufacture both denture products and perfumes and toilet waters. The products are so unrelated that I am of the opinion that it is highly improbable that the public would ever associate these products with a common source.

There are other considerations which also militate against the conclusion reached by the majority. The majority noted the different merchandising methods employed by applicant and opposer (viz.—the use of "Frances Denney girls" at "Frances Denney counters," placed strategically at large department stores as contrasted with the ordinary drug counter sales of opposer) but felt that they "should not be given controlling significance since these practices might change at any time." It would seem, however, from the majority's characterization of the products of the parties as "*over-the-counter* dental products, perfumes and toilet water" (emphasis added), that the majority has given no weight to the Frences Denney trade practices, for its use of the words "over-the-counter" with respect to the products of both parties would imply, at least, that all are sold in the same manner. I question whether perfumes and toilet water, which retail at $5 per quarter ounce and $2.75 for two ounces, respectively, sold in the manner specified above, can properly be characterized as "over-the-counter" products in the same sense as that phrase would apply to relatively inexpensive products such as laxatives, denture suction powders and denture cleanser. I am of the opinion that the differences in merchandising are a definite factor to be considered in the determination of likelihood of confusion. Trade practices have often been considered by this court as bearing on the identical issue. Lauritzen & Co., Inc., v. Borden Co., 239 F.2d 405, 44 C.C.P.A., Patents, 720; Armour and Co. v. Organon Inc., 245 F.2d 495, 44 C.C.P.A., Patents, 1010.

Furthermore, it must be borne in mind that expensive perfumes and toilet waters such as are here involved are not items which are casually purchased. On the contrary, most women exercise the utmost care and discrimination in choosing a suitable fragrance. In view of this fact, the possibility of confusion is still further minimized. Sleepmaster Products Co., Inc., v. American Auto-Felt Corp., 241 F.2d 738, 44 C.C.P.A., Patents, 784, 788.

The foregoing considerations leave no doubt in my mind that concurrent use of applicant's and opposer's marks with respect to the goods here involved would not create a likelihood of confusion. I would affirm.