OTTO ROTH & COMPANY, INC., Appellant,

v.

UNIVERSAL FOODS CORPORATION, Appellee.

Appeal No. 80–563.

United States Court of Customs and Patent Appeals.

Feb. 5, 1981.

Rehearing Denied March 19, 1981.

1318

Allison C. Collard, Roslyn, N. Y., for appellant.

Fred Wiviott, Milwaukee, Wis., for appellee.

Before MARKEY, Chief Judge, and RICH, BALDWIN, MILLER and NIES, Judges.

RICH, Judge.

This appeal is from the decision of the United States Patent and Trademark Office Trademark Trial and Appeal Board (board) sustaining appellee's opposition and refusing to register appellant's trademark. The decision is vacated and the case is remanded.

*Background*

Prior to the present opposition, Lankor International, Inc., appellee-opposer's predecessor-in-interest, applied for registration on the Principal Register of the words

BRIE NOUVEAU as a trademark for "cheese," application serial No. 65,932, filed October 15, 1975, alleging first use in July, 1973. The examiner refused registration and applicant appealed. The board affirmed the rejection holding that, as applied to cheese, BRIE NOUVEAU "is merely descriptive or deceptively misdescriptive thereof * * *." 200 USPQ 301 (digest only).

Appellant, Otto Roth & Company, Inc., is a distributor of domestic and imported cheeses. On April 16, 1976, it filed an application for registration on the Principal Register of the words ESPRIT NOUVEAU for "cheese products," claiming first use in April, 1976. The cheese on which appellant uses this mark is 50% butterfat brie cheese. The mark was published for opposition, and appellee filed a timely notice of opposition alleging likelihood of confusion as to the source of appellant's goods in view of appellee's prior and continuous use of BRIE NOUVEAU as a trademark for identical goods—i. e., "cheese products." In addition to BRIE NOUVEAU, which is used on a 60% butterfat brie cheese, appellee markets a 50% butterfat brie cheese on which the only trademark used is ILE DE FRANCE with ship design. Appellee's label for its 60% butterfat brie cheese is reproduced below:

Appellant's application to register ESPRIT NOUVEAU depicts those words merely in plain block capital letters.

## Board Opinion

In its opinion of May 30, 1979, 204 USPQ 941 (digest only), from which this appeal is taken, the board stated that its prior affirmation of the refusal to register BRIE NOUVEAU on the Principal Register did not deprive appellee of standing to question appellant's right to register ESPRIT NOUVEAU. It said:

It is settled that prior use of a term in a descriptive sense or even as a grade mark is sufficient to preclude the registration by a subsequent user of the same or a similar term for like goods *even if said term may not, like that of the prior user, fall within the proscription of Section 2(e)(1)* providing, however, that confusion is likely as to the source of the goods marketed thereby *or* that a registration issued to the subsequent user would place a cloud upon the prior user's right to continue to use said term unhindered and free from harassment. [Emphasis ours.]

The board further declared that

"BRIE NOUVEAU" serves, although possibly in a *non-distinctive* fashion, as a grade designation for a 60% butterfat brie cheese as distinguished from the 50% butterfat brie cheese which is also marketed by opposer under a "ILE DE FRANCE" label without, as might be expected, the notation "BRIE NOUVEAU". * * * "BRIE NOUVEAU" therefore performs a useful function, in and of itself, which could possibly be impinged upon by "ESPRIT NOUVEAU" which would also perform a function, per se. This leads to the ultimate question, namely, whether "ESPRIT NOUVEAU" is confusingly similar to "BRIE NOUVEAU". [Emphasis ours.]

The board concluded that there were significant "similarities between the marks in both sound and appearance," that consumers might rely upon NOUVEAU as the distinguishing feature of the marks (especially in the absence of evidence to show that NOUVEAU is used by others in the cheese industry), that consumers familiar with BRIE NOUVEAU might assume ESPRIT NOUVEAU is a different brie cheese (60% versus 50% butterfat) emanating from the same producer, and held that the above was sufficient to demonstrate a likelihood of confusion. In conclusion, the board stated in a footnote:

It should be noted that sustaining opposer's position herein under Section 2(d) of the statute cannot serve to take the notation "BRIE NOUVEAU" out of the proscription of Section 2(e)(1) against the registration on the Principal Register of merely descriptive marks. They are different sections of the statute with different considerations and applications which make them mutually exclusive in their roles in the registration procedure.

For these reasons, it sustained the opposition and this appeal followed.

## OPINION

Section 13 of the Lanham Act, 15 U.S.C. § 1063, states that an opposition may be filed by "Any person who believes that he would be damaged by the registration of a mark upon the principal register * * *." Yet that section does not require that actual damage be proved before an opposition is sustained, "nor does it provide that anyone who shows that he will be damaged by the registration will necessarily succeed in preventing registration." *American Novawood Corp. v. U. S. Plywood-Champion Papers, Inc.,* 57 CCPA 1276, 1282, 426 F.2d 23, 828, 165 USPQ 613, 616 (1970). *See American Security Bank v. American Security and Trust Co.,* 571 F.2d 564, 197 USPQ 65 (CCPA 1978). The concept of *damage*—determined in this type of proceeding by "balancing rights and determining whose are superior," *American Novawood, supra*—is inextricably tied to the *grounds* upon which the opposer asserts damage.

As has been previously noted, "In opposing the granting of a registration, all an opposer can do is try to convince the Patent Office, or the courts, that the granting of the registration would be contrary to the statute, which lays down the terms on which registration may be obtained." *Armour & Co. v. Organon Inc.,* 44 CCPA 1010, 1017, 245 F.2d 495, 500, 114 USPQ 334, 338

(1957) (Rich, J., concurring). The primary focus of each of those "terms" must, however, remain distinct.

One who opposes on the ground that registration should be refused as proscribed by section 2(e)(1) alleges use of, or the right to use, a descriptive term in his business and is trying to prevent a claim of exclusive ownership of that term, asserting a privilege which he holds in common with all others, including the applicant, to the free use of the language.[1] Any use by opposer, whether begun prior or subsequent to applicant's, and whether in a descriptive context or in the manner of a mark, may be sufficient to defeat the applicant's claim that the term is distinctive of its goods or has become distinctive thereof within the meaning of section 2(f) of the Lanham Act. In some instances, for example where the term is generic, no use at all need be shown, but only a right to use. Section 2(e)(1) is thus concerned with the prevention of harassment, based on a registration, under which an exclusive right could be claimed in a term which does not identify source. *DeWalt, Inc. v. Magna Power Tool Corp.*, 48 CCPA 909, 289 F.2d 656, 129 USPQ 275 (1961); *Astra Pharmaceutical Inc. v. Pharmaton, S. A.*, 52 CCPA 1334, 345 F.2d 189, 145 USPQ 461 (1965) (Rich, J., concurring).

One who opposes registration to an applicant under section 2(d) is attempting to protect his individual rights, as the owner of some means of identifying the source of his goods, by preventing registration of a mark so similar to that which he asserts identifies source that concurrent use of the two is likely to cause confusion and thus foil

the function of his means of identification.[2] *See Federated Foods, Inc. v. Fort Howard Paper Co.*, 544 F.2d 1098, 192 USPQ 24 (CCPA 1976); *American Throwing Co. v. Famous Bathrobe Co.*, 45 CCPA 737, 250 F.2d 377, 116 USPQ 156 (1957); *Armour & Co. v. Organon*, supra. In this situation, the opposer must prove he has proprietary rights in the term he relies upon to demonstrate likelihood of confusion as to source, whether by ownership of a registration, prior use of a technical "trademark," prior use in advertising, prior use as a trade name, or whatever other type of use may have developed a trade identity.

That the linked concepts of "damage" and "grounds" vary with each asserted statutory basis for unregistrability, and are wholly different with respect to sections 2(d) and 2(e)(1), is a point the board did not make manifest by its opinion. The board stated, as we have pointed out above, that prior use of a term *in a descriptive sense* is sufficient to successfully oppose registration of an otherwise registrable mark provided (1) there is a likelihood that consumers will confuse the two and thus the source of the goods to which they are applied, *or* (2) that a registration would frustrate the opposer's right to use the term in a descriptive sense unhindered and free from harassment.

Absent a requirement in the first part of the board's test that the user of that term demonstrate that it identifies source and a requirement in the second part that what applicant seeks to register is a descriptive term (or its equivalent), the statement is

1. Section 2(e)(1) provides that:

    No trademark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register on account of its nature unless it—

    \* \* \* \* \* \*

    (e) Consists of a mark which, (1) when applied to the goods of the applicant is merely descriptive or deceptively misdescriptive of them \* \* \*.

2. The trademark relied on by an opposer in an opposition need not be registered. Section 2(d) states that:

    No trademark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register on account of its nature unless it—

    \* \* \* \* \* \*

    (d) Consists of or comprises a mark which so resembles a mark registered in the Patent and Trademark Office or a mark or trade name previously used in the United States by another and not abandoned, as to be likely, when applied to the goods of the applicant, to cause confusion, or to cause mistake, or to deceive \* \* \*.

statutorily untenable. The cases cited by the board in support of this hybrid rule are inapposite. Parts (1) and (2) of the above test are mutually exclusive considerations and the misjudgment of the board in formulating that statement was to combine, respectively, sections 2(d) and 2(e)(1) into one measure of registrability.

■ It is clear that use of a term in a descriptive sense is sufficient to impart standing to oppose federal registration of a descriptive "word, name, symbol, or device" as a trademark; yet it is equally clear that if an opposer's alleged means of trade designation is not distinctive—does not identify source—then there is no basis upon which to compare such a thing with the applicant's mark to determine whether confusion as to source is likely. If BRIE NOUVEAU is, as the board had previously held, "merely descriptive or deceptively misdescriptive" of 60% butterfat brie cheese, that is, not a trademark, on what ground is registration of ESPRIT NOUVEAU, a nondescriptive term, to be denied?

■ Use in the preamble of § 2 of the term "trademark," and use in the body of the statute of the term "mark"—which includes a trademark—may have precipitated some confusion and the resultant erroneous joining of sections 2(d) and 2(e)(1). To function as a trademark, defined to include "any word, name, symbol, or device or any combination thereof adopted and used by a manufacturer or merchant to identify his goods and distinguish them from those manufactured or sold by others," § 45, 15 U.S.C. § 1127, that "word, name, symbol, or device" must be distinctive, whether inherently so or through the acquisition of secondary meaning. *Canal Co. v. Clark*, 13 Wall 311, 80 U.S. 311, 323, 20 L.Ed. 581 (1871) (Lackawanna Coal). In other words, it must indicate the origin of the goods. *Standard Paint Co. v. Trinidad Asphalt Manufacturing Co.*, 220 U.S. 446, 31 S.Ct.

456, 55 L.Ed. 536 (1911) (Ruberoid). No precedent need be cited for the long-standing principle that a "word, name, symbol, or device" merely descriptive of the goods to which it is applied is not distinctive.[3]

Excluding for the moment consideration of other means of trade identification, we focus upon trademarks, which both parties assert their respective terms to be. In comparing ESPRIT NOUVEAU and BRIE NOUVEAU, it must be borne in mind that assertions of trademark status in a thing can lead only to a conclusion that it is a trademark or is not a trademark, which dichotomy embodies the difference between trademark *rights* (based upon distinctiveness) and mere *use* in a trademark sense. If one's "word, name, symbol, or device" is distinctive, he has the *right* under the law to prevent others from using it or something so similar as to be likely to cause public confusion as to source. As this court has previously stated, "Unless he has such a right, he does not own what we call a trademark." *In re Deister Concentrator Co.*, 48 CCPA 952, 962, 289 F.2d 496, 501, 129 USPQ 314, 320 (1961). Thus, even though something is *used* as a trademark, if it is not distinctive, the user does not have a trademark because he has no existing trademark rights.[4]

Neither the board nor appellee has questioned the inherent distinctiveness of ESPRIT NOUVEAU, and we therefore assume it functions as a trademark. We must next determine whether BRIE NOUVEAU is a "mark" within the meaning of § 2(d), the only statutory ground for refusing registration of ESPRIT NOUVEAU asserted by appellee.

Section 45 of the Lanham Act (15 U.S.C. § 1127) states that "the term 'mark' includes any trademark, service mark, collective mark, or certification mark, entitled to registration under this Act whether regis-

**3.** It is, of course, anomalous that the Lanham Act speaks of registering a "trademark" unless it is "merely descriptive." For if it *is* "merely descriptive," it is *not* a trademark, and this is so even though the user intends it to be a trademark.

**4.** Accordingly, we note that it is redundant to use the term "distinctive trademark" and, as discussed in footnote 3, incorrect to speak of a "descriptive trademark."

tered or not." While this statement defines by inclusion only and does not differentiate between the Principal and Supplemental registers, we note that the proper focus of § 2(d) is not on "mark" or "trade name," but upon the phrase, "likely * * * to cause confusion, or to cause mistake, or to deceive." We also observe that the inquiry is not simply whether confusion is likely, but whether confusion as to source is likely. *San Fernando Electric Mfg. Co. v. JFD Electronics Components Corp.*, 565 F.2d 683, 685, 196 USPQ 1, 2 (CCPA 1977); *Paula Payne Products Co. v. Johnson Publishing Co.*, 473 F.2d 901, 902, 177 USPQ 76, 77 (CCPA 1973); *Vornado, Inc. v. Breuer Electric Manufacturing Co.*, 55 CCPA 858, 860, 861, 390 F.2d 724, 726, 727, 156 USPQ 340, 342 (1968). Further, the issue is not merely whether public confusion as to source is likely, but whether the identification of source results from trade identity rights in opposer which the law will recognize.

Under section 2(d), as utilized in an opposition, confusion, or a likelihood thereof, is not recognized where one claiming to be aggrieved by that confusion does not have a right superior to his opponent's, or where he has not proved that that which he claims identifies him as the source of goods or services actually does so.

Even if appellee adopted and used BRIE NOUVEAU with the intent "to identify its goods and distinguish them from those manufactured or sold by others"—i. e., adopted and intended to use BRIE NOUVEAU as a trademark—BRIE NOUVEAU must be distinctive if it is to enable its user to successfully oppose registration of a mark so similar as to be likely to cause confusion. Hence, if BRIE NOUVEAU is "merely descriptive or deceptively misdescriptive" of brie cheese, appellee must show that BRIE NOUVEAU has acquired a secondary meaning identifying it as the source.

As related above, the board sustained rejection of an earlier attempt to register BRIE NOUVEAU, holding that BRIE NOUVEAU is "merely descriptive or deceptively misdescriptive" as applied to cheese.

The board apparently adheres to that reasoning in this case, noting the "descriptive character" of BRIE NOUVEAU, although it repeatedly refers to BRIE NOUVEAU as a "mark." Assuming that the board properly held that BRIE NOUVEAU is merely descriptive or deceptively misdescriptive, it did not require, as it should have, that appellee prove secondary meaning before applying the § 2(d) likelihood of confusion test.

 In light of our present holding that the issue of distinctiveness of an opposer's mark or other means of trade designation must be considered in an opposition based on section 2(d), we vacate the decision below and remand the case to the board for determination of the issue of the distinctiveness of BRIE NOUVEAU and for further proceedings consistent with this opinion.

*VACATED AND REMANDED.*