**HILLMAN BARGE & CONSTRUCTION COMPANY, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 17460.**

United States District Court W. D. Pennsylvania.

Feb. 18, 1960.

Lee W. Eckels, Pittsburgh, Pa., for plaintiff.

Daniel J. Snyder, United States Atty., Pittsburgh, Pa., for defendant.

SORG, District Judge.

This is an action against the United States for the recovery of excess profits tax, and interest thereon, paid by plaintiff for the year 1950. The facts are stipulated by the parties and are hereby adopted by the Court.

In connection with filing its income tax return for 1950, plaintiff made application under Section 447(e) of the Internal Revenue Code of 1939 for the benefits of Section 446 in computing its excess profits tax credit for the year 1950 as a member of a "depressed industry subgroup". 26 U.S.C.A. Excess Profits Taxes Internal Revenue Code of 1939, §§ 447(e), 446. There is no dispute that plaintiff was entitled to use Section 446 in computing its excess profits tax credit. In determining its credit under this section, plaintiff did not deduct from its total assets the amount of advances made by its parent corporation, Hillman Transportation Company. Defendant contends that Section 446 was amended by Section 510 of the Revenue Act of 1951, c. 521, 65 Stat. 452, 26 U.S.C.A. Excess Profits Taxes, § 442(f), to require that such advances be deducted. Plaintiff contends that it was not.

Section 446, enacted as part of the Revenue Act of 1950, grants relief in computing its excess profits tax credit to a taxpayer who qualifies as a member of a "depressed industry subgroup" whose net income during the base period (1946–1949) was depressed as defined therein. This section permits such a taxpayer to reconstruct an average base period net income by multiplying its "total assets" by an industry rate of return determined by the Secretary of the Treasury, together with other adjustments not here involved. As originally enacted it did not contain any definition of "total assets" nor did any other section of the Act contain any definition of total assets applicable to Section 446.

Section 510 of the Revenue Act of 1951 provides as follows:

"Sec. 510. Definition Of Total Assets For Purposes Of Sections 442–446

"The first sentence of section 442 (f) (relating to definition of total assets) is hereby amended to read as follows: 'For the purposes of this section, the taxpayer's total assets for any day shall be determined as of the end of such day and shall be an amount equal to the excess of—

"'(1) the sum of the cash and the property (other than cash, inadmissible assets, and loans to members of a controlled group as defined in section 435(f)(4)) held by the taxpayer in good faith for the purposes of the business, over

"'(2) the amount of any indebtedness (other than borrowed capital as defined in section 439(b)(1)) to a member of a controlled group (as defined in section 435(g)(6)) which includes the taxpayer.'"

Defendant contends that Section 510 amends Section 446 to require that the loans to plaintiff by its parent corporation be excluded from its total assets in

reconstructing its average base period net income on which its excess profits tax credit is based. Defendant relies upon the caption of Section 510, the legislative history of the section, and Treasury Regulation 130, Section 40.446–3(c).

The legislative history upon which defendant relies consists of comments in the report of the Senate Committee on Finance. In S.Rep. No. 781, 82d Cong., 1st Sess. (1951–2) Cum.Bull. 458,517–518), U.S.Code Cong. and Adm.Service 1951, p. 2058, the Committee stated the following:

"18. *Capital reduction for loans made by parent corporations to subsidiaries.*

"Section 510 of your committee's bill provides that where a subsidiary corporation computes its average earnings credit on the basis of the industry rate of return applied to its total assets and where such subsidiary has borrowed funds from its parent corporation on open account, the amount so borrowed shall be eliminated from its total assets.

"This is necessary to close a loophole in the existing excess profits law. Under present provisions, a parent corporation does not incur a capital reduction by reason of amounts loaned on open account to subsidiaries. The subsidiary, however, would obtain an increase in the amount of its total assets to which the industry rate of return is applied under several of the relief sections. By excluding from total assets of the subsidiary the amount represented by such loans from a parent corporation or from a member of a controlled group, the amendment made by your committee prevents duplication in computing the credits of the respective corporations.

"This amendment is effective with respect to taxable years ending after the date of enactment of this bill."

The committee further commented in S.Rep. No. 781, Part 2, 82d Cong., 1st Sess. (1951–2 Cum.Bull. 545,610):

"Section 510. Definition of Total Assets for Purposes of Sections 442–446

"Section 510, for which there is no corresponding provision in the House bill, amends section 442(f) of the code (relating to the definition of total assets) to require that in determining total assets a reduction shall be made equal to the amount of any indebtedness (other than borrowed capital as defined in section 439(b)(1) to a member of a controlled group, as defined in section 435(g)(6), which includes the taxpayer. Section 442(f) of the code now provides that total assets for any day shall be determined as of the end of such day and shall be an amount equal to the sum of the cash and the property (other than cash, inadmissible assets, and loans to members of a controlled group as defined in section 435(f) held by the taxpayer in good faith for the purposes of the business. Thus, at present, section 442(f) includes borrowed funds in determining total assets, even though such indebtedness may be to a member of a controlled group which includes the taxpayer and such loans may be of a type that are not taken into account, as loans to members of a controlled group in determining the capital position or capital changes of the lender for the purposes of the excess-profits tax. The amendment in effect provides that open account indebtedness, and other indebtedness not meeting the definition of borrowed capital, shall reduce total assets if such indebtedness is owed to a member of the same controlled group.

"This section is effective with respect to taxable years ending after the date of enactment of this bill."

The enacting provisions of Section 510 are clear and unambiguous. Section 510

expressly amends the first sentence of Section 442(f) relating to the definition of "total assets" and provides that, "For the purposes of this section, the taxpayer's total assets for any day shall be * * *". Section 510 makes no express reference to Section 446, nor does Section 442 or any other section make the definition of "total assets" applicable to Section 446. Similarly, the method of arriving at an average base period net income under Section 446, which is then used to compute the excess profits tax credit, is clear and unambiguous. Under these circumstances, the issue is whether the provisions of Section 446 can be affected by the comments of the Senate Committee on Finance or by the caption of Section 510, in the absence of reference to Section 446 in the enacting provisions of Section 510 of the Revenue Act of 1951.

 This Court is of the opinion that in the absence of any reference to Section 446 in Section 510, and in view of the plain meaning of the provisions of Sections 510 and 446, it was not the intent of Congress to amend Section 446 to provide a definition of total assets or to limit the generally accepted meaning of the term as used therein, as defendant contends.

The following statements of principle are appropriate:

1. "Factors of this type have led to the wise rule that the title of a statute and the heading of a section cannot limit the plain meaning of the text. United States v. Fisher, 2 Cranch, 358, 386 [2 L.Ed. 304]; Cornell v. Coyne, 192 U.S. 418, 430 [24 S.Ct. 383, 48 L.Ed. 504]; Strathearn S.S. Co. v. Dillon, 252 U.S. 348, 354 [40 S.Ct. 350, 64 L.Ed. 607]. For interpretative purposes, they are of use only when they shed light on some ambiguous word or phrase. They are but tools available for the resolution of a doubt. But they cannot undo or limit that which the text makes plain." Brother-hood of Railroad Trainmen v. Baltimore & O. R. Co., 1947, 331 U.S. 519, 528, 67 S.Ct. 1387, 1392, 91 L.Ed. 1646, cited with approval in United States v. Minker, 1956, 350 U.S. 179, 185, 76 S.Ct. 281, 100 L.Ed. 185.

2. "The short answer is that there is no need to refer to the legislative history where the statutory language is clear. 'The plain words and meaning of a statute cannot be overcome by a legislative history which, through strained processes of deduction from events of wholly ambiguous significance, may furnish dubious bases for inference in every direction.' Gemsco [Inc.] v. Walling, 324 U.S. 244, 260 [65 S.Ct. 605, 89 L.Ed. 921] (1945). This canon of construction has received consistent adherence in our decisions." Ex parte Collett, 1949, 337 U.S. 55, 61, 69 S.Ct. 944, 947, 959, 93 L.Ed. 1207.

 Treasury Regulation 130, Section 40.446–3(c) is likewise of no avail to the defendant. It provides that the definition of "total assets" for the purpose of Section 446 is the same as that set forth in Section 442(f). In view of the plain meaning of Section 446, which section is completely independent of Section 442, and of the plain meaning of Section 510, which omits any reference to Section 446, the Regulation appears to add a legislative provision which could only be enacted by Congress. Helvering v. Credit Alliance Corp., 1942, 316 U.S. 107, 62 S.Ct. 989, 86 L.Ed. 1307.

The method of arriving at the excess profits tax credit employed by plaintiff in this case is correct.

In accordance with their stipulation that the amount of tax to be refunded shall be subject to recomputation by the Internal Revenue Service should the plaintiff prevail in this action, the parties will submit an order for judgment for plaintiff consistent with this opinion.