**E. W. BLISS COMPANY, Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

**No. 19576.**

United States Court of Appeals, Sixth Circuit.

May 7, 1970.

James P. Murtagh, New York City, for plaintiff-appellant; Simpson, Thacher & Bartlett, New York City, Laurence E. Oliphant, Jr., Squires, Sanders & Dempsey, Cleveland, Ohio, on the brief.

Richard B. Stone, Dept. of Justice, Washington, D. C., for defendant-appellee; Johnnie M. Walters, Asst. Atty. Gen., Lee A. Jackson, Gilbert E. Andrews, Edward Lee Rogers, Attys., Dept. of Justice, Washington, D. C., on the brief; Bernard Stuplinski, U. S. Atty., Cleveland, Ohio, of counsel.

Before PHILLIPS, Chief Judge, and McCREE and BROOKS, Circuit Judges.

PHILLIPS, Chief Judge.

The taxpayer, E. W. Bliss Company, sued to recover excess profits taxes in the sum of $252,666.62 paid for the year 1952. District Judge James C. Connell found for the Government and dismissed the complaint. The taxpayer appeals. We affirm.

Decision of the case requires interpretation of § 446 of the Excess Profits Tax Act.[1] Pertinent sections of this statute, including § 446, are made Appendix A to this opinion.

The question presented on this appeal is whether the taxpayer was entitled to include corporate stock which it owned in other corporations in its "total assets" for the purpose of calculating its "average base period net income."

In 1950, 1951 and 1952 the taxpayer qualified as a member of the depressed industry subgroup designated as "Manufacture of Metalworking Machinery, Including Machine Tools." The taxpayer was so classified by the Secretary of the Treasury under § 446(c) for the period 1946 through 1948. It is undisputed that the taxpayer is entitled to compute its

[1]. Sec. 446 of the Internal Revenue Code of 1939, as added by the Excess Profits Tax Act of 1950, 64 Stat. 1137. Certain provisions of the Excess Profits Tax Act were amended by the Revenue Act of 1951, enacted Oct. 20, 1951. 65 Stat. 452.

average base period net income pursuant to § 446 because it was a member of this depressed industry subgroup.

After receiving a notice of deficiency from the Commissioner of Internal Revenue, the taxpayer paid the disputed taxes and interest on September 1, 1959, and filed a timely claim for refund which was disallowed. This suit then was filed for recovery of the taxes and interest.

The taxpayer owned corporate stock (other than stock in a foreign personal holding company or stock which is not a capital asset) on the last day of each year of its base period (1946–1949) in the following amounts:

| | |
|---|---|
| 1946 | $1,582,315 |
| 1947 | 1,836,699 |
| 1948 | 3,060,859 |
| 1949 | 3,068,859 |

In computing its average base period net income pursuant to § 446(b) the taxpayer included its corporate stock owned in other corporations in its total assets for the last day of each of the years of its base period. The Commissioner eliminated this stock from the taxpayer's total assets as inadmissible assets under § 440(a) (1) (Appendix A). The result was to reduce the taxpayer's excess profits credit [2] for the year 1952 and its carryovers to 1952 of its unused excess profits credits from 1950 and 1951 and to produce a deficiency of excess profits tax and interest for 1952, which is the subject of the present litigation. The taxpayer contends in this Court, as it did in the District Court, that it was entitled to include the corporate stock in question in its total assets for purposes of computing its "average base period net income" pursuant to § 446(b).

This appeal thus presents a question of statutory construction, i. e., the meaning of the words "total assets" as that term appears in § 446(b). To determine the meaning of total assets we examine the language and purpose of the excess profits credit provisions of which § 446 (b) is an integral part.

The excess profits credit was designed to exclude from a taxpayer's current earnings subject to the excess profits tax that portion thereof which would have been earned if there had not been an increase in profits because of the wartime economy. For corporate excess profits tax purposes, this credit was based upon average net income during the base period years, 1946–49 (which net income is used as a measure of normal profits) and was allowed against the amount of income otherwise subject to the tax. The credit was intended to eliminate from a taxpayer's current earnings that portion which reflected a taxpayer's normal "earning capacity in the absence of hostilities in Korea or a large program of military expenditures." S.Rep. No. 2679, 81st Cong., 2d Sess. 3, 6 (1951). Accord: H.Rep. No. 3142, 81st Cong., 2d Sess. 3, 5 (1950); see Jarecki v. G. D. Searle & Co., 367 U.S. 303–304, 81 S.Ct. 1579, 6 L.Ed.2d 859.

Generally the credit was based upon a taxpayer's average net income realized during the base period years 1946 through 1949 as a measure of normal earnings, or on its invested capital, whichever yielded the lesser tax. In a number of situations, however, the statute recognized that during the base period income might have been abnormally low or the business situation of the taxpayer might have been changing substantially, making the actual base period income an inadequate measure of normal earnings. Congress therefore wrote into the statute certain "general relief" sections, of which § 446 is one. These sections provide that under such circumstances a taxpayer could compute his excess profits credit by using a substitute or constructive base period income. In the present case the taxpayer was allowed to use a substitute base period income because it was a member of an industry subgroup determined by in-

---

2. Computed under § 435. See Appendix A.

come statistics to be depressed during the base period. The substitute base period was determined by multiplying the taxpayer's total assets by an adjusted rate of return for its industry subgroup. Under the provisions of §§ 442, 443, 444 and 445 immediately preceding § 446 in the Act, four other groups of taxpayers also were entitled to the benefits of the general relief provisions and used essentially the same formula applicable in the present case for determining their substitute average base period net incomes. These were taxpayers whose incomes during the base period were inadequate as a measure of their normal income because of: (1) production interruptions or temporary business depression (§ 442); (2) a substantial change in products or services (§ 443); (3) increase in capacity for production or operation (§ 444); or (4) their commencing business as a new corporation during the base period (§ 445).

In each of the four situations covered by §§ 442–445 described in the preceding paragraph, a taxpayer was required to eliminate from its total assets those assets which were defined as inadmissible assets by § 440(a). Under § 440(a) (see Appendix A) one of the definitions of inadmissible assets is stock in corporations, (except stock in a foreign personal holding company, and except stock which is not a capital asset).

The exclusion of inadmissible assets from total assets under §§ 442–445 was accomplished by a specific definition in §§ 442(f) and 445(b) and (c) and by cross reference in § 443(g) (2) and 444 (g) (2) (see Appendix A). No such exclusionary language or cross reference appears in § 446.

The issue in this case is whether the District Court was correct in holding that the term total assets appearing in § 446(b), relating to the excess profits credit of the taxpayer and other members of depressed industry subgroups, should be construed as eliminating inadmissible assets (in this case stock owned in other corporations) despite the absence of any cross reference in § 446 to § 440(a) or § 442(f).

The Government relies upon the fact that dividends on the stock owned by the taxpayer in other corporations were not subjected to the excess profits tax. Since the dividends from this stock were not subject to the excess profits tax, it is contended by the Government that Congress clearly intended to exclude inadmissible assets from total assets in determining the average base period net income under § 446(b).

In 1951 the Commissioner of Internal Revenue promulgated a regulation by authority of 26 U.S.C. § 3291 with respect to §§ 442–446 of the Excess Profits Tax Act. This regulation provided that the definition of total assets as set forth under § 442(f) would apply to § 446 in the same manner as to §§ 442–445. That part of this regulation, designated as Treasury Regulation 130 (1939 Code) Treas.Reg. 130 §§ 40.442–3 through 40.-447–2, which applies to § 446 is made Appendix B to this opinion.

It appears that this regulation has been enforced uniformly as to all taxpayers to whom § 446 has been applicable.

The taxpayer contends that in using the term total assets in § 446 Congress must be presumed to have intended precisely what it said—that "total" means "total." It is argued that the words "total assets" are of clear and unambiguous import and that neither the Commissioner nor the courts can construe total assets to mean "total assets less stock owned in other corporations." The taxpayer asserts that if Congress had intended for total assets as used in § 446 to have the same meaning as in §§ 441–445, it would have said so by inserting in § 446 a cross reference or other express language to that effect, and that no rule of statutory construction will permit the Commissioner, the District Court or this Court to supply that omission.

The Government argues that since the term total assets as applied to a member

of a depressed industry subgroup fulfills the same function as it does in the other four categories, the Regulation of the Commissioner (Appendix B) is correct in construing these words in § 446 in harmony with its meaning in §§ 441–445. It is contended that the Commissioner's construction is supported by the similarity of the language of §§ 441–446, particularly the similarities of the formulas for determining the substitute base period incomes and the industry rates of return.

It is asserted by the Government that the Commissioner's consistent interpretation of total assets is in harmony with, and in fulfillment of, a basic objective of the excess profits credit; that the rationale of the credit was to provide a measure of normal income to be excluded from the income subject to the tax; that dividends on corporate stock were not includable in excess profits tax net income and therefore were not subject to the excess profits tax; and that Congress intended for that reason that corporate stock owned by the taxpayer in other corporations should not be includable in total assets for the purpose of calculating the excess profits tax credit.

The Government further contends that to include corporate stock in total assets in computing the excess profits credit would violate the purpose of the credit, i. e., to provide a basis for excluding normal income subject to the tax but for the credit from the excess profits to be taxed. Accordingly, says the Government, the credit provisions in the excess profits tax statutes, including those using actual base period earnings and invested capital as a base for the credit, were structured by Congress to exclude inadmissible assets, such as corporate stock owned in other corporations, from the credit base.

In view of this clear Congressional intent, contends the Government, there is no justification for interpreting the term total assets in § 446 according to the literal or plain meaning rule to mean

*all* assets, including inadmissible assets such as stock that the taxpayer owned in other corporations. To do so, says the Government, would discriminate irrationally in favor of members of a depressed industry subgroup, such as the taxpayer in the present case, who happened to own inadmissible assets of substantial value during the base period, as against all other taxpayers subject to the tax, including taxpayers qualifying for relief under the other four general relief provisions, §§ 441–445. This would mean that taxpayers qualifying under § 446, and only these taxpayers, would be favored with an excess profits tax credit based on assets which yielded income of a type not subject to the excess profits tax, contrary to the basic purpose of the excess profits tax credit. "Such eccentric legislation," says the Government's brief, "is not to be lightly assumed and is not to be assumed here." Upon this reasoning the Government argues that the longstanding regulation promulgated in 1951 (Appendix B) should be held to be valid.

The Excess Profits Tax Act of 1950 originated as H.R. 9827, 81st Cong., 2d Sess. The version of this bill which passed the House did not contain the language of § 446 here under consideration. The bill as passed by the House contained the definition of "admissible and inadmissible assets" set forth in § 440. The language of § 446 originated in the Senate Finance Committee and was included in S.Rep. 2679 of that committee submitted to the Senate on December 18, 1950. 96 Cong.Rec. 16730 (1950).[3]

In the Senate debate on this bill Senator Walter George, Chairman of the Senate Finance Committee, said:

"Mr. President, this tax bill is presented in response to the mandate contained in the Revenue Act of 1950, requiring the Committee on Finance to report a corporate excess-profits tax as early as practicable during the

---

3. All references to the Congressional Record in this opinion are to the permanent edition.

Eighty-first Congress, after November 15, 1950.

"In order to comply with this mandate and report an excess-profits tax as early as possible, the Senate Committee on Finance began hearings on the excess-profits-tax bill on Monday, December 4, 1950, while the bill still was being debated in the House. Only by sitting for long hours and under severe pressure has your committee been able to report the bill at this time.

"An excess-profits-tax bill is not the type of bill which can be handled quickly. Too many difficult problems are inherent in this type of tax. The treatment of new corporations, the effect of such a tax upon growing and expanding businesses, and the need of relief for corporations with inadequate credits are all factors which must be considered in framing an excess-profits-tax law. These problems are much more difficult under present conditions than in the case of an economy which has been fully mobilized for war. Moreover, they are also much more important under present conditions than in the case of a full-scale war. The present emergency is likely to be of long duration, and as a result, the relief provisions must be adequate if further business expansion is not to be stopped altogether.

"The committee has approached these problems from a twofold point of view. An attempt has been made to provide solutions for the more important types of cases involving inadequate excess-profits credits. However, at the same time, it has also been recognized that it is necessary to secure sizable additional revenue to aid in meeting the rising costs of our military program. This latter factor, of course, has made it necessary to moderate the relief provisions more than might otherwise be desirable." 96 Cong.Rec. 16,767 (1950)

With respect to the general relief provisions Senator George said:

"Because of the high rate used under an excess-profits tax it is necessary to be unusually careful in defining the base upon which the rate is imposed, so as to avoid inequities and discriminations which might be tolerable if the rate used were low. After all the general adjustments have been made to the taxpayer's credit and taxable income, there would undoubtedly be a considerable number of hardship cases. Therefore, the bill, like the World War II law, contains a series of provisions designed to adjust for abnormalities in the experience of individual taxpayers. However, the general approach taken in the bill is substantially different from that used in the World War II law." 96 Cong.Rec. 16,769 (1950)

Senator George made the following explanation of the provision for depressed industry subgroups, eventually enacted as § 446, which the Senate Finance Committee had recommended as an amendment to H.R. 9827:

"A somewhat different type of relief is provided for the taxpayer whose industry was depressed during the base period. In these cases the industry average rate of return during the base period is not an appropriate method of providing relief, since the average reflects the depression in the industry. Therefore, the qualified taxpayer is permitted an average base-period net income calculated by applying 80 percent of the rate of return earned by the taxpayer's industry during the period 1936 through 1949 to its average total assets during the base period. It should be borne in mind that this type of relief is available only if the taxpayer's industry is depressed.

"The depressed industries relief is available when the average rate of return of the industry during the base period is less than 60 percent of its average for the period 1936 through 1949. The 60 percent test is a rigorous one, since, generally speaking,

profits were higher in the base-period years than over the period 1936 through 1949.

"The classification of industries used in relief cases based on abnormalities, new products, or changes in capacity is set up on a comparatively broad basis and is shown in both the bill and the committee report. A Government document is now available which will assist the taxpayer in determining the industry in which he belongs. He is a part of that industry in which he obtains the largest percentage of his gross receipts.

"The industry average rates of return will be computed from data regularly compiled from income-tax returns in preparing the Treasury Department's Statistics of Income. Tentative rates will be proclaimed on or before March 1, 1951, and final rates will be released at a later date, when the 1949 data have been completed.

"The classification of industries used for the purposes of depressed industry relief is somewhat more refined. The existence of such industries and the appropriate rates of return will also be announced by the Treasury Department. A taxpayer will be regarded as a member of a depressed industry only if more than 50 percent of its gross receipts are obtained in that industry.

"The formula used in providing relief in abnormality cases is simpler and less erratic than the one contained in the House bill and can be applied where all of the taxpayer's years are abnormal, which was not possible under the House formula.

"The relief provision for increased capacity does not appear in the House bill nor does the depressed-industry provision. Testimony at the committee's hearings indicated that both provisions were necessary." 96 Cong. Rec. 16,770 (1950)

The amendments recommended by the Senate Finance Committee to H.R. 9827, including the provision which became §

446, were approved en bloc by the Senate. 96 Cong.Rec. 16,773 (1950). The House bill, as amended thereupon was passed by the Senate. Ibid. p. 16,816.

The House conferees agreed to practically all the Senate amendments. The Conference Report was approved by both the House and Senate. 96 Cong.Rec. 16,978, 17,025–27 (1950). The bill was signed by the President January 3, 1951.

We conclude that when the Senate amended the House bill by adding § 446, it was intended that the words "total assets" were to be construed in the context of the bill already passed by the House. The previously passed House version of the bill contained a definition of "Admissible and Inadmissible assets" which declared stock in corporations to be an inadmissible asset. The legislative history convinces this Court that the words "total assets" in § 446 added by the Senate amendment were intended to be restricted by the definition of "Admissible and Inadmissible Assets" (§ 440) already contained in H.R. 9827 as passed by the House.

If there was a doubt as to whether Congress intended for the term "total assets" in § 446 to have the same meaning as in §§ 442–445, this doubt was removed by the enactment of the 1951 amendments to the Excess Profits Tax Law of 1950. Section 510 of the 1951 Act was as follows:

### SEC. 510. DEFINITION OF TOTAL ASSETS FOR PURPOSES OF SECTIONS 442–446.

The first sentence of section 442(f) (relating to definition of total assets) is hereby amended to read as follows: "For the purposes of this section, the taxpayer's total assets for any day shall be determined as of the end of such day and shall be an amount equal to the excess of—

"(1) the sum of the cash and the property (other than cash, inadmissible assets, and loans to members of a controlled group as defined in section 435(f) (4)) held

by the taxpayer in good faith for the purposes of the business, over

"(2) the amount of any indebtedness (other than borrowed capital as defined in section 439(b) (1)) to a member of a controlled group (as defined in section 435(g) (6)) which includes the taxpayer."

Act of October 20, 1951, Pub. Law No. 183, 65 Stat. 551.

As said by the Supreme Court in United States v. American Trucking Assn., 310 U.S. 534, 542–544, 60 S.Ct. 1059, 1063–1064, 84 L.Ed. 1345, speaking through Mr. Justice Reed:

"In the interpretation of statutes, the function of the courts is easily stated. It is to construe the language so as to give effect to the intent of Congress. There is no invariable rule for the discovery of that intention. To take a few words from their context and with them thus isolated to attempt to determine their meaning, certainly would not contribute greatly to the discovery of the purpose of the draftsmen of a statute, particularly in a law drawn to meet many needs of a major occupation.

"There is, of course, no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes. Often these words are sufficient in and of themselves to determine the purpose of the legislation. In such cases we have followed their plain meaning. When that meaning has led to absurd or futile results, however, this Court has looked beyond the words to the purpose of the act. Frequently, however, even when the plain meaning did not produce absurd results but merely an unreasonable one 'plainly at variance with the policy of the legislation as a whole' this Court has followed that purpose, rather than the literal words. When aid to construction of the meaning of words, as used in the statute, is available, there certainly can be no 'rule of law' which forbids its use, however clear the words may appear on 'superficial examination.' The interpretation of the meaning of statutes, as applied to justiciable controversies, is exclusively a judicial function. This duty requires one body of public servants, the judges, to construe the meaning of what another body, the legislators, has said. Obviously there is danger that the courts' conclusion as to legislative purpose will be unconsciously influenced by the judges' own views or by factors not considered by the enacting body. A lively appreciation of the danger is the best assurance of escape from its threat but hardly justifies an acceptance of a literal interpretation dogma which withholds from the courts available information for reaching a correct conclusion. Emphasis should be laid, too, upon the necessity for appraisal of the purposes as a whole of Congress in analyzing the meaning of clauses or sections of general acts. A few words of general connotation appearing in the text of statutes should not be given a wide meaning contrary to a settled policy, 'excepting as a different purpose is plainly shown.' " (Footnotes omitted.)

In Richards v. United States, 369 U.S. 1, 11, 82 S.Ct. 585, 7 L.Ed.2d 492, the Court said, speaking through Chief Justice Warren: "We believe it fundamental that a section of a statute should not be read in isolation from the context of the whole Act, * * *"

In Boston Sand & Gravel Co. v. United States, 278 U.S. 41, 48, 49 S.Ct. 52, 54, 73 L.Ed. 170, Mr. Justice Oliver Wendell Holmes said:

"It is said that when the meaning of language is plain we are not to resort to evidence in order to raise doubts. That is rather an axiom of experience than a rule of law, and does not preclude consideration of persuasive evidence if it exists. If Congress has been accustomed to use a certain phrase with a more limited meaning than might be attributed to it by common practice, it would be arbitrary to refuse to consider that

fact when we come to interpret a statute."

To like effect see Association of Westinghouse Salaried Employees v. Westinghouse Electric Corp., 348 U.S. 437, 444, 75 S.Ct. 489, 99 L.Ed. 510; Helvering v. Stockholms Enskilda Bank, 293 U.S. 84, 93, 55 S.Ct. 60, 79 L.Ed. 211; J. C. Penny Co. v. Commissioner of Internal Revenue, 312 F.2d 65, 72 (2d Cir.).

The taxpayer relies upon Hillman Barge & Construction Co. v. United States, 182 F.Supp. 536 (W.D.Pa.). To the extent that the opinion in that case is in conflict with the views herein expresed, we respectfully decline to follow it.

We conclude that the long-standing regulation of the Commissioner (Appendix B) correctly construes § 446 of the Act.

The judgment of the District Court is affirmed.

## APPENDIX A

### SUBCHAPTER D—EXCESS PROFITS TAX

[as added by Sec. 101, Excess Profits Tax Act of 1950, c. 1199, 64 Stat. 1137]

§ 430. *Imposition of tax.*

(a) *General Rule.* In addition to other taxes imposed by this chapter, there shall be levied, collected, and paid for each taxable year ending after June 30, 1950, and beginning before January 1, 1954, upon the adjusted excess profits net income, as defined in section 431, of every corporation (except a corporation exempt under section 454) an excess profits tax equal to whichever of the following amounts is the lesser:

(1) 30 per centum of the adjusted excess profits net income, or

\*    \*    \*    \*    \*    \*

(26 U.S.C., Sec. 430, 1952 ed.)

§ 431. *Definition of adjusted excess profits net income*

The term "adjusted excess profits net income" in the case of any taxable year means the excess profits net income (as defined in section 433(a)) minus the sum of:

(1) *Excess profits credit.* The amount of the excess profits credit allowed under section 434; and

(2) *Unused excess profits credits.* The amount of the unused excess profits credit adjustment for the taxable year computed in accordance with section 432.

If such sum is less than $25,000, it shall be increased to $25,000.

(26 U.S.C., Sec. 431, 1952 ed.)

§ 433. *Excess profits net income*

(a) *Taxable years ending after June 30, 1950.* The excess profits net income for any taxable year ending after June 30, 1950, shall be the normal-tax net income, as defined in section 13(a) (2), for such year increased or decreased by the following adjustments:

(1) *Adjustments.*

(A) *Dividends received.* The credit for dividends received shall apply, without limitation (except the limitation relating to dividends in kind), to all dividends on stock of all corporations, except that no credit for dividends received shall be allowed with respect to dividends (actual or constructive) on stock of foreign personal holding companies or dividends on stock which is not a capital asset;

\*    \*    \*    \*    \*    \*

(b) *Taxable years in base period.* For the purposes of computing the average base base period net income, the excess profits net income for any taxable year shall be the normal-tax net income, as defined in section 13(a) (2) as in effect for such taxable year, increased or decreased by the following adjustments (for additional adjustments in case of certain reorganizations, see part II of this subchapter):

\*    \*    \*    \*    \*    \*

(6) *Dividends received.* The credit for dividends received shall apply without limitation (except the limitation relating to dividends in kind), to

all dividends on stock of all corporations, except that no credit for dividends received shall be allowed with respect to dividends (actual or constructive) on stock of foreign personal holding companies or dividends on stock which is not a capital asset;

\* \* \* \* \* \*

(26 U.S.C., Sec. 433, 1952 ed.)

§ 435 [as amended by Secs. 504, 506, 507, 516, and 602, Revenue Act of 1951, c. 521, 65 Stat. 452]. *Excess profits credit—based on income*

(a) *Amount of excess profits credit.* The excess profits credit for any taxable year, computed under this section, shall be—

(1) *Domestic corporations.* In the case of a domestic corporation the sum of—

(A) 83 per centum of the average base period net income,

(B) if the average base period not income of the taxpayer is the amount determined under subsection (d) of this section or under section 442, 12 per centum of the amount of the base period capital addition, computed under subsection(f), and

(C) 12 per centum of the net capital addition (as defined in subsection (g) (1)) for the taxable year,

minus 12 per centum of the net capital reduction (as defined in subsection (g) (2)) for the taxable year.

\* \* \* \* \* \*

(b) *Base period.* As used in this subchapter the term "base period" means the period beginning January 1, 1946, and ending December 31, 1949, except that in the case of a taxpayer whose first taxable year under this subchapter was preceded by a taxable year which ended after December 31, 1949, and before April 1, 1950, and which began before January 1, 1950, the term "base period" means the period of 48 consecutive months ending with the close of such preceding taxable year.

(c) *Average base period net income —determination.* For the purposes of this section the average base period net income of the taxpayer shall be the amount determined under subsection (d), subject to the exception that if the taxpayer is entitled to the benefits of subsection (e) of this section, or section 442, 443, 444, 445 or 446, or any subsection of section 459, then the average base period net income shall be the amount determined under subsection (d) or (e) or under such section or subsection, whichever results in the lesser tax under this subchapter for the taxable year for which the tax under this subchapter is being computed.

(d) *Average base period net income— general average.* The average base period net income determined under this subsection shall be determined as follows:

(1) By computing the excess profits net income for each month in the base period. The excess profits net income for any month during any part of which the taxpayer was in existence shall be the excess profits net income for the taxable year in which such month falls divided by the number of full calendar months in such year, but in no case shall the excess profits net income for any month be less than zero. The excess profits net income for any month during no part of which the taxpayer was in existence shall be zero.

(2) By eliminating from the base period whichever of the following twelve months results in the higher average base period net income—

(A) The twelve consecutive months the elimination of which produces the highest average base period net income, or

(B) The twelve months which remain after retaining in the base period the thirty-six consecutive months which produce the highest average base period net income.

(3) By computing the aggregate of the excess profits net income for each

of the thirty-six months remaining in the base period.

(4) By dividing by 3 the amount ascertained under paragraph (3).

\* \* \* \* \* \*

(e) *Average base period net income—alternative based on growth.*

(1) *Taxpayers to which subsection applies.* A taxpayer shall be entitled to the benefits of this subsection if the taxpayer commenced business before the end of its base period, and if either—

(A) (i) the total assets of the taxpayer as of the first day of its base period (when added to the total assets for such day of all corporations with which the taxpayer has the privilege under section 141 of filing a consolidated return for its first taxable year under this subchapter), determined under paragraph (3), did not exceed $20,000,-000, and

\* \* \* \* \* \*

(2) *Computation.* The average base period net income determined under this subsection shall be determined as follows:

(A) By computing (in the manner provided by the second sentence of subsection (d) (1)) the excess profits net income for each of the last 24 months in the base period.

(B) By computing the aggregate of the excess profits net income for each such month.

(C) By dividing by 2 the amount ascertained under subparagraph (B).

(D) By computing the aggregate of the excess profits net income for each of the last twelve months in the base period.

(E) By computing (in the manner provided by the second sentence of subsection (d) (1)) the excess profits net income for each of the twelve months in the period beginning July 1, 1949, and ending June 30, 1950. For the purposes of this

subparagraph and subparagraph (G) the excess profits net income for any month after December 1949 shall be the "weighted excess profits net income" for the taxable year in which such month falls divided by the number of full calendar months in such year, but in no case shall such excess profits net income for any month be less than zero. \* \*

\* \* \* \* \* \*

The average base period net income determined under this subsection shall be the amount ascertained under subparagraph (C), (D), or (F), whichever is the highest, except that in the case of a taxpayer described in subparagraph (G), its average base period net income determined under this subsection shall be the amount ascertained under subparagraph (C), (D), (F), or (G) (ii), whichever is the highest.

(3) *Total assets.* For the purposes of this subsection the taxpayer's total assets as of any day shall be determined as of the beginning of such day and shall be an amount equal to the sum of the cash and the property other than cash, held by such taxpayer for the purposes of the business. Such property shall be included in an amount equal to its adjusted basis for determining gain upon sale or exchange. In case the taxpayer has the privilege under section 141 of filing a consolidated return for its first taxable year under this subchapter, the total assets of the affiliated group as of any day shall be determined under regulations prescribed by the Secretary.

\* \* \* \* \* \*

(f) *Capital additions in base period.*

(1) *Definition of yearly base period capital.* For the purposes of this subsection, the yearly base period capital for any taxable year shall be the sum of the equity capital (as defined in section 437(c)) at the beginning of such taxable year and an amount equal to 75 per centum of the daily borrowed

capital (as defined in section 439(b)) for the first day of such taxable year, reduced (but not below zero) by the sum of—

(A) the amount of inadmissible assets at the beginning of such taxable year, determined under section 440, minus 25 per centum of the excess, if any, of such amount over the amount of the equity capital as defined in section 437(c)) at the beginning of such taxable year,

(B) 75 per centum of the amount of loans to members of a controlled group, determined under paragraph (4), and

(C) 75 per centum of the amount of the adjustment for interest on borrowed capital, determined under paragraph (5).

For special rule in the case of banks, see paragraph (6).

\* \* \* \* \* \*

(g) *Net capital addition or reduction.*

(1) *Net capital addition.* The net capital addition for the taxable year shall, for the purposes of this section, be the excess, divided by the number of days in the taxable year, of the aggregate of the daily capital addition for each day of the taxable year over the aggregate of the daily capital reduction for each day of the taxable year. If there is an increase in inadmissible assets for the taxable year, determined under paragraph (5), the net capital addition shall be the excess of the amount determined under the preceding sentence over—

(A) unless subparagraph (B) is applicable, the amount of such increase in inadmissible assets;

(B) if the amount of such increase in inadmissible assets is in excess of the net capital addition determined without regard to this sentence and without regard to paragraph (3) (C), the amount of such increase in inadmissible assets minus 25 per centum of such excess.

For further adjustments with respect to the amount determined under the preceding provisions of this paragraph, see paragraph (9).

\* \* \* \* \* \*

(26 U.S.C., Sec. 435, 1952 ed.)

§ 440 [as amended by Sec. 325, Revenue Act of 1951, *supra*]. *Admissible and inadmissible assets*

(a) *Definitions.* For the purposes of this subchapter—

(1) The term "inadmissible assets" means—

(A) Stock in corporations, except stock in a foreign personal holding company, and except stock which is not a capital asset;

and

(B) Obligations described in section 22(b) (4) any part of the interest from which is excludible from gross income or allowable as a credit against net income.

(C) The economic interest referred to in the provisions of section 117(k) (2) relating to coal if the taxpayer is subject to such provisions with respect to the income from such coal.

(2) The term "admissible assets" means all assets other than inadmissible assets.

\* \* \* \* \* \*

(26 U.S.C., Sec. 440, 1952 ed.)

§ 442 [as amended by Secs. 509 and 510, Revenue Act of 1951, *supra*]. *Average base period net income—abnormalities during base period*

(a) *In general.* If a taxpayer which commenced business on or before the first day of its base period establishes that, for any taxable year within, or beginning or ending within, its base period:

(1) normal production, output, or operation was interrupted or diminished because of the occurrence, either immediately prior to, or during such taxable year, of events unusual and peculiar in the experience of such taxpayer, or

(2) the business of the taxpayer was depressed because of temporary

economic circumstances unusual in the case of such taxpayer,

the taxpayer's average base period net income determined under this section shall be the amount computed under subsection (c) or (d), whichever is applicable. If such taxpayer is also entitled to the benefits of subsection (h), the taxpayer's average base period net income determined under this section shall be the amount computed under subsection (c) or (d), whichever is applicable to the taxpayer, or the amount computed under subsection (h), whichever results in the lesser tax under this subchapter for the taxable year. In the case of any other taxpayer entitled to the benefits of subsection (h), the taxpayer's average base period net income determined under this section shall be the amount computed under subsection (h).

\*    \*    \*    \*    \*    \*

(d) *More than twelve months affected by abnormalities.* If more than 12 of the months remaining after the application of subsection (b) (2) fall within taxable years the excess profits net income of which was reduced (or the deficit in excess profits net income of which was increased) by reason of an abnormality determined to exist under subsection (a), the average base period net income computed under this subsection shall be computed as follows:

(1) By determining the amount of the taxpayer's total assets for the last day of each of its taxable years ending after the first day of its base period and prior to the first day of its first taxable year under this subchapter.

(2) By computing the average of the amounts ascertained under paragraph (1).

(3) By multiplying the amount ascertained under paragraph (2) by the base period rate of return, proclaimed by the Secretary under section 447, for the taxpayer's industry classification.

(4) By determining the aggregate amount of interest paid or incurred by the taxpayer for all taxable years ending after the first day of its base period and prior to the first day of its first taxable year under this subchapter, dividing such aggregate by the total number of months in such years, and multiplying the quotient by 12.

(5) By subtracting the amount ascertained under paragraph (4) from the amount ascertained under paragraph (3).

\*    \*    \*    \*    \*    \*

(e) *Substitute excess profits net income.*

(1) *Computation.* For the purposes of subsection (c) (2) and subsection (h), the substitute excess profits net income for any month shall be computed as follows:

(A) By multiplying the amount of the taxpayer's total assets for the last day of the taxable year in which such month falls or for the last day of its taxable year immediately preceding its first taxable year under this subchapter, whichever day is earlier, by the rate of return provided under paragraph (2).

(B) By reducing the amount ascertained under subparagraph (A) by the total interest paid or incurred by the taxpayer for the 12 months beginning with the first day of the taxable year within which such month falls.

(C) By dividing by 12 the amount ascertained under subparagraph (B).

(2) *Base period yearly rate of return.* The rate of return to be used under paragraph (1) (A) shall be the base period yearly rate of return, proclaimed by the Secretary under section 447 for the taxpayer's industry classification, \*    \*    \*

\*    \*    \*    \*    \*    \*

(f) *Total assets.* For the purposes of this section, the taxpayer's total assets for any day shall be determined as of the end of such day and shall be an amount equal to the excess of—

(1) the sum of the cash and the property (other than cash, inadmissible assets, and loans to members of a controlled group as defined in section 435(f) (4)) held by the taxpayer in good faith for the purposes of the business, over

(2) The amount of any indebtedness (other than borrowed capital as defined in section 439(b) (1)) to a member of a controlled group (as defined in section 435(g) (6)) which includes the taxpayer.

Such property shall be included in an amount equal to its adjusted basis for determining gain upon sale or exchange, determined under the rules provided in section 441.

(g) *Taxpayer's industry classification.* The taxpayer's industry classification shall be determined, for the purposes of subsection (d), by reference to the last taxable year within or beginning within its base period, and, for the purposes of subsection (e), by reference to the taxable year within which falls the last month for which a substitute excess profits net income is determined; and, in either case, shall be the industry classification under section 447 to which is attributable the largest amount of the taxpayer's gross receipts for such taxable year.

\* \* \* \* \* \*

(i) *Rules for application of section.* The benefits of this section shall not be allowed unless the taxpayer makes application therefor in accordance with section 447(e).

\* \* \* \* \* \*

(26 U.S.C., Sec. 442, 1952 ed.)

§ 443 [as amended by Sec. 511, Revenue Act of 1951, *supra*]. *Average base period net income—change in products or services*

(a) *In general.* If a taxpayer which commenced business on or before the first day of its base period establishes with respect to any taxable year that—

(1) During so much of its three immediately preceding taxable years as falls within the 36-month period ending on the last day of its base period, there was a substantial change in the products or services furnished by the taxpayer,

(2) More than 40 per centum of its gross income or 33 per centum of its net income for such taxable year is attributable to one or more of the new products or services, and

(3) Its average monthly excess profits net income (determined under subsection (e)) for such taxable year exceeds 125 per centum of its average monthly excess profits net income (determined under subsection (e)) for the taxable years ending within its base period and prior to the taxable year in which the first change to which gross income is attributed for the purpose of this subsection occurred,

then, in computing its excess profits credit for taxable years under this subchapter which end on or after the last day of the earliest taxable year with respect to which the requirements of paragraphs (1), (2), and (3) are satisfied, its average base period net income determined under this section shall be the amount computed under subsection (b).

(b) *Average base period net income.* The average base period net income determined under this section shall be computed as follows:

(1) By multiplying the amount of the taxpayer's total assets for (A) the last day of its taxable year immediately preceding its first taxable year under this subchapter, or (B) the last day of the taxable year in which the taxpayer first meets the requirements of subsection (a), whichever day is later, by the base period rate of return, proclaimed by the Secretary under section 447, for the taxpayer's industry classification.

(2) By subtracting from the amount ascertained under paragraph (1) the total interest paid or incurred by the taxpayer for the 12 months ending

with whichever day is used under such paragraph.

(c) *Taxpayer's industry classification.* For the purposes of this section, the taxpayer's industry classification shall be the industry classification under section 447 to which is attributable the largest amount of the taxpayer's gross receipts for the taxable year which includes whichever day is used under subsection (b).

\* \* \* \* \* \*

(f) *Rules for application of section.*

(1) The benefits of this section shall not be allowed unless the taxpayer makes application therefore in accordance with section 447(e).

\* \* \* \* \* \*

(g) *Cross references.*

\* \* \* \* \* \*

(2) For definition of total assets, see section 442(f).

\* \* \* \* \* \*

(26 U.S.C., Sec. 443, 1952 ed.)

§ 444 [as amended by Sec. 520, Revenue Act of 1951, *supra*]. *Average base period net income—increase in capacity for production or operation*

(a) *In general.* If a taxpayer which commenced business on or before the first day of its base period establishes that, during the 36-month period ending on the last day of its base period, there was an increase, as defined in subsection (b), in its capacity for production or operation, the taxpayer's average base period net income determined under this section shall be the amount computed under subsection (c).

\* \* \* \* \* \*

(c) *Average base period net income.* The average base period net income determined under this section shall be computed as follows:

(1) By multiplying the amount of the taxpayer's total assets for the last day of its taxable year immediately preceding its first taxable year under this subchapter by the base period rate of return, proclaimed by the Secretary

under section 447, for the taxpayer's industry.

(2) By subtracting from the amount ascertained under paragraph (1) an amount equal to the total interest paid or incurred by the taxpayer for the 12 months ending with the end of such immediately preceding taxable year.

\* \* \* \* \* \*

(e) *Taxpayer's industry classification.* For the purposes of this section, the taxpayer's industry classification shall be the industry classification under section 447 to which is attributable the largest amount of the taxpayer's gross receipts for its taxable year immediately preceding its first taxable year under this subchapter.

(f) *Rules for application of section.*

(1) The benefits of this section shall not be allowed unless the taxpayer makes application therefor in accordance with section 447(e).

\* \* \* \* \* \*

(g) Cross references.

\* \* \* \* \* \*

(2) For definition of total assets, see section 442(f).

(26 U.S.C., Sec. 444, 1952 ed.)

§ 445 [as amended by Sec. 512, Revenue Act of 1951, *supra*]. *Average base period net income—new corporation*

(a) *New corporation.* A taxpayer which commenced business after the first day of its base period shall, except as provided in subsection (g), be considered a new corporation for the purposes of this section, and its average base period net income determined under this section shall be the amount computed under subsection (b).

(b) *Average base period net income.* The average base period net income of a new corporation determined under this section shall be computed as follows:

(1) For the purpose of determining the excess profits credit for any of the taxpayer's first three taxable years

which is a taxable year under this subchapter—

(A) By multiplying the amount of the total assets for such taxable year (determined under subsection (c)), held by the taxpayer in good faith for the purposes of the business, by the base period rate of return, proclaimed by the Secretary under section 447, for the taxpayer's industry classification.

(B) By subtracting from the amount ascertained under subparagraph (A) the total interest paid or incurred by the taxpayer for the 12 months ending with the last day of such taxable year.

(2) For the purpose of determining the excess profits credit for any taxable year under this subchapter other than a taxable year described in paragraph (1)—

(A) By multiplying the amount of the taxpayer's total assets (as defined in section 442(f)) for (i) the last day of its taxable year immediately preceding its first taxable year under this subchapter, or (ii) the last day of its third taxable year, whichever day is later, by the base period rate of return, proclaimed by the Secretary under section 447, for the taxpayer's industry classification.

(B) By subtracting from the amount ascertained under subparagraph (A) the total interest paid or incurred by the taxpayer for the 12 months ending with whichever day is used under such subparagraph.

\* \* \* \* \* \*

(c) *Total assets for first three years.* The amount of the total assets for any taxable year referred to in subsection (b) (1) shall, for the purposes of such subsection, be the sum of

(1) the total assets (as defined in section 442(f)) for the last day of the taxpayer's taxable year immediately preceding its first taxable year under this subchapter, and

(2) the net capital addition (determined under section 435(g)) for such taxable year referred to in subsection (b) (1),

minus the net capital reduction (determined under section 435(g)) for such taxable year referred to in subsection (b)(1). For the purpose of this subsection, the net capital addition or reduction shall be computed without regard to the limitation to 75 per centum provided in section 435(g) (3) (C) and section 435(g) (4) (C) and (E).

(d) *Taxpayer's industry classification.* The taxpayer's industry classification shall be determined, for the purposes of subsection (b) (1), by reference to the particular taxable year for which the excess profits credit is thereunder determined, and, for the purposes of subsection (b) (2), by reference to the taxpayer's third taxable year; and, in either case, shall be the industry classification under section 447 to which is attributable the largest amount of the taxpayer's gross receipts for such taxable year.

\* \* \* \* \* \*

(f) *Rules for application of section.* The benefits of this section shall not be allowed unless the taxpayer makes application therefor in accordance with section 447(e).

\* \* \* \* \* \*

(26 U.S.C., Sec. 445, 1952 ed.)

§ 446. *Average base period net income—depressed industry subgroups*

(a) *In general.* If a taxpayer which commenced business on or before the first day of its base period is a member of a depressed industry subgroup, as defined in subsection (c), its average base period net income determined under this section shall be the amount computed under subsection (b).

(b) *Average base period net income.* The average base period net income determined under this section shall be computed as follows:

(1) By determining the amount of the taxpayer's total assets for the last day of each of its taxable years ending

after the first day of its base period and prior to the first day of its first taxable year under his subchapter.

(2) By computing the average of the amounts ascertained under paragraph (1).

(3) By multiplying the amount ascertained under paragraph (2) by the adjusted rate of return, proclaimed by the Secretary under subsection (e), for the taxpayer's industry subgroup.

(4) By determining the aggregate amount of interest paid or incurred by the taxpayer for all taxable years ending after the first day of its base period and prior to the first day of its first taxable year under this subchapter, dividing such aggregate by the total number of months in such years, and multiplying the quotient by 12.

(5) By subtracting the amount ascertained under paragraph (4) from the amount ascertained under paragraph (3).

(c) *Depressed industry subgroups.* The Secretary shall determine and proclaim as a depressed industry subgroup any industry subgroup (defined in accordance with subsection (f)) having a rate return (determined under subsection (d) (1)) for the period 1946 through 1948 which is less than 63 per centum of its rate of return (determined under subsection (d) (2)) for the period 1938 through 1948.

(d) *Rates of return for industry subgroups.*

(1) *Period 1946–1948.* The rate of return for an industry subgroup for the 3-year period 1946 through 1948 shall be obtained by dividing the sum of the aggregate net income (computed without regard to the net operating loss deduction provided in section 23 (s)) for the 3 years 1946 through 1948 and the aggregate interest deduction for such years shown on the income tax returns filed by the corporations in such industry subgroup submitting balance sheets, by the aggregate assets for such years of such corporations as of the close of the taxable years for which such returns were filed. Such aggregate net income, interest deduction and total assets shall include the amounts reported on the income tax returns for the calendar years 1946, 1947, and 1948, and the amounts reported on returns for other taxable years the greater part of which falls in such calendar years.

(2) *Period 1938–1948.* The rate of return for an industry subgroup for the 11-year period 1938 through 1948 shall be determined in the same manner as is provided in paragraph (1) with the substitution of the years 1938 through 1948 for the years 1946 through 1948.

(e) *Adjusted rates of return for depressed industry subgroups.* The adjusted rate of return for a depressed industry subgroup shall be a rate equal to four-fifths of the rate of return for such industry subgroup for the 11-year period 1938 through 1948 as determined under subsection (d) (2). The Secretary shall determine and proclaim the adjusted rate of return (computed to the nearest thousandth) for each industry subgroup determined and proclaimed to be depressed under subsection (c).

(f) *Industry subgroups.* For the purposes of this section, industry subgroups shall be generally in accord with the industry subgroups regularly used by the Treasury Department in compiling published statistics from income tax returns, but with such combinations of subgroups as the Secretary determines are necessary to provide reasonably comparable data over the period 1938 through 1948.

(g) *Members of industry subgroup.* For the purposes of this section, a taxpayer is a member of an industry subgroup if more than fifty per centum of the taxpayer's gross receipts (as defined in section 435(e) (5)) for the taxable years beginning with or within its base period is attributable to such industry subgroup.

(h) *Tentative determinations of depressed industry subgroups and adjusted rates of return.* The Secretary, not later

than March 1, 1951, shall proclaim the industry subgroups tentatively determined to be depressed in accordance with subsection (c) and the tentative adjusted rates of return (computed to the nearest thousandth), determined under subsection (d), for such industry subgroups. Such tentative determinations shall be effective until such time as final determinations are proclaimed by the Secretary. Such final determinations shall relate back as though such determinations had been in effect in place of the tentative determinations. If the application of this section is made in accordance with a tentative determination, such application shall be redetermined in accordance with the final determination when proclaimed. The period of limitation prescribed under sections 275, 276, and 322 shall not begin to run with respect to overpayments or deficiencies in tax caused by such redetermination prior to such time as the final determination is proclaimed by the Secretary.

(i) *Rules for application of section.* The benefits of this section shall not be allowed unless the taxpayer makes application therefor in accordance with section 447(e). The determinations by the Secretary required under this section shall be made on the basis of returns regularly used by the Treasury Department in compiling published statistics from income tax returns. For the purposes of this section, rates of return shall be determined after giving effect to renegotiation of contracts in accordance with renegotiation statistics published in the statistics compiled with respect to industry subgroups.

(26 U.S.C., Sec. 446, 1952 ed.)

§ 447. *Industry base period rates of return*

(a) *Base period yearly rate of return.* The Secretary shall determine and proclaim for each industry classification in subsection (c) a rate of return (computed to the nearest thousandth) for each of the four years 1946 through 1949. * * *

(b) *Base period rate of return.* The Secretary shall determine and proclaim for each industry classification in subsection (c) a rate of return (computed to the nearest thousandth) for the four year period 1946 through 1949. Such base period rate of return for each industry classification shall be obtained by aggregating the net income and interest deduction (such amounts being determined as provided under subsection (a)) for such four years and dividing the aggregate by the sum of the total assets (determined as provided under subsection (a)) for such four years.

(c) *Industry classification.* For purposes of this subchapter the classification of taxpayers by industry shall be as provided in the table below. Each such industry classification is defined in accordance with the specifications shown in the Standard Industrial Classification Manual (prepared by the Division of Statistical Standards, Bureau of the Budget) for the major industry group or groups the numbers of which appear opposite such classification.

\* \* \* \* \* \*

(d) *Tentative rates of return.* The Secretary, not later than March 1, 1951, shall determine and proclaim for each industry classification, tentative base period yearly rates of return and a tentative base period rate of return (each computed to the nearest thousandth). Such tentative rates of return shall be effective until such time as the base period yearly rates of return and base period rates of return are determined and proclaimed. The base period yearly rates of return and base period rates of return, upon proclamation thereof by the Secretary, shall relate back as though such rates had been in effect in place of the tentative rates of return. If the application of section 442, 443, 444, 445, or 446 is made in accordance with tentative rates of return, such application shall be redetermined in accordance with the base period yearly rate of return or the base period rate of return when determined and proclaimed. The period of

limitation prescribed under section 322 and sections 275 and 276 shall not begin to run with respect to overpayments or deficiencies in tax caused by such redetermination prior to such time as the base period yearly rates of return and the base period rates of return are determined and proclaimed by the Secretary.

(e) *Application for benefits of section 442, 443, 444, 445, or 446.* The tax for any taxable year under this subchapter shall be determined without regard to section 442, 443, 444, 445, or 446 unless an application for the benefits of such section, setting forth the grounds for the application of such section in such detail and in such manner as the Secretary may prescribe, is filed by the taxpayer—

(A) With its return for the taxable year, or

(B) Within the period of time prescribed by section 322 * * *

\* \* \* \* \* \*

(26 U.S.C., Sec. 447, 1952 ed.)

## APPENDIX B

Treasury Regulations 130 (1939 Code):
Sec. 40.242–2 [as amended by T.D. 5973, 1953–1 Cum.Bull. 321] *Computation of average base period net income*— * * *

\* \* \* \* \* \*

(d) *Definitions.* For the purpose of section 442—

(1) The term "total assets" for any day means the excess, determined as of the end of such day, of—

(i) the sum of the cash and other property (other than inadmissible assets, as defined in section 440(a) (1), and other than loans to members of a controlled group, as defined in section 435(f) (4)) held by the taxpayer in good faith for purposes of the business, over

(ii) the amount of any indebtedness (other than borrowed capital, as defined in section 439(b) (1) to a member of a controlled group, as

defined in section 435(g) (6), which includes the taxpayer.

\* \* \* \* \* \*

Sec. 40.443–3 *Computations—(a) Average base period net income.* The average base period net income determined under section 443(b) is computed as follows:

(1) The amount of the total assets determined under section 442(f) and under section 40.442–3(d) (1) for the last day of the taxpayer's last taxable year ending before July 1, 1950, or for the last day of the first taxable year in which the taxpayer first meets the requirements of section 443(a) and section 40.443–1, whichever day is later, is multiplied by the base period rate of return determined under section 447 for the taxpayer's industry classification. * * *

\* \* \* \* \* \*

(c) *Definitions.* For the purpose of section 443—

(1) For definition of "total assets" see section 40.442–3(d) (1).

\* \* \* \* \* \*

Sec. 40.443–3 *Computations—(a) Average base period net income.* Average base period net income is computed under section 444(c) as follows:

(1) The amount of the total assets determined under section 442(f) and under section 40.442–3(d) (1) for the last day of the taxpayer's last taxable year ending before July 1, 1950, is multiplied by the base period rate of return determined under section 447 for the taxpayer's industry classification. * * *

\* \* \* \* \* \*

(c) *Definitions.* For the purpose of this section—

(1) For definition of "total assets," see section 40.442–3(d) (1).

\* \* \* \* \* \*

Sec. 40.445–2 *Computations—(a) Average base period net income for first three taxable years.* The average base period net income for each of the taxpayer's first three taxable years (count-

ing as the first taxable year, the taxable year in which the taxpayer commenced business) which is an excess profits tax taxable year is computed under section 445 as follows:

(1) The amount of the taxpayer's total assets determined under (d) (1) of this section for such taxable year is multiplied by the base period rate of return determined under section 447 for the taxpayer's industry classification. * * *

\* \* \* \* \* \*

(b) *Average base period net income for fourth and subsequent taxable years.* The average base period net income for each excess profits tax taxable year subsequent to the taxpayer's third taxable year (counting as the first taxable year, the taxable year in which the taxpayer commenced business) is computed under section 445 as follows:

(1) The amount of the taxpayer's total assets determined under (d) (2) of this section is multiplied by the base period rate of return determined under section 447 for the taxpayer's industry classification. * * *

\* \* \* \* \* \*

(d) *Definitions.* For the purpose of this section—

(1) The amount of the taxpayer's "total assets" for any taxable year referred to in (a), above, is (i) the sum of (A) the total assets (as defined in section 442(f) and section 40.442–3 (d) (1)) for the last day of the taxpayer's last taxable year ending before July 1, 1950, and (B) the net capital addition determined under section 435 (g) for the taxable year for which the excess profits credit is being computed, minus (ii) the net capital reduction determined under section 435 (g) for such taxable year. * * *

(2) The amount of the taxpayer's "total assets" for any taxable year referred to in (b), above, means the total assets determined under section 442(f) and section 40.442–3(d) (1) for the last day of the taxpayer's last taxable year ending before July 1,

1950, or the last day of the taxpayer's third taxable year, whichever day is later.

\* \* \* \* \* \*

Sec. 40.446–2 [as amended by T.D. 5908, 1952–1 Cum.Bull. 143] *Determination of depressed industry subgroups and adjusted rates of return therefor.* (a) For the purpose of section 446, the depressed industry subgroups determined and proclaimed to be depressed by the Secretary are defined in accordance with specifications shown in the Standard Industrial Classification Manual prepared by the Division of Statistical Standards, Bureau of the Budget.

(b) For the purpose of section 446, depressed industry subgroups and adjusted rates of return for depressed industry subgroups are only those proclaimed by the Secretary. Under section 446(h), tentative determinations of depressed industry subgroups and adjusted rates of return have been proclaimed by the Secretary, and are set forth below. The tentative adjusted rates of return and tentative determinations of depressed industry subgroups shall be effective until such time as the adjusted rates described in section 446(e) and the determinations of depressed industry subgroups under section 446(c) are determined and proclaimed by the Secretary. The adjusted rates of return, when proclaimed by the Secretary, shall relate back as though they had been in effect in place of the tentative adjusted rates. Any application of section 446 made in accordance with a tentative determination and tentative adjusted rate shall be redetermined in accordance with the final determination and adjusted rate when proclaimed. * * *

(c) The tentative determinations of depressed industry subgroups and the tentative adjusted rates of return therefor are as follows:

\* \* \* \* \* \*

(d) The final determinations of depressed industry subgroups and the adjusted rates of return therefor are the same as the tentative determinations and tentative adjusted rates of return

set forth under (c) of this section. Accordingly, no redetermination is necessary of any application of section 446 properly made in accordance with a tentative determination and tentative adjusted rate and, therefore, the periods of limitation prescribed under section 322 and sections 275 and 276 are not extended as provided by section 446(h) and by (b) of this section, since no overpayment or deficiency in tax results from the final determinations of depressed industry subgroups and the adjusted rates of return therefor.

Sec. 40.446–3 *Computations—(a) Average base period net income.* The computation of the average base period net income under section 446(b) is as follows:

(1) The amount of the taxpayer's total assets for the last day of each taxable year ending after the first day of its base period and prior to July 1, 1950, is determined under section 442 (f) and under section 40.442–3(d) (1).

\* \* \* \* \* \*

(c) *Definitions.* For the purpose of this section—

(1) For definition of "total assets," see section 40.442–3(d) (1).

\* \* \* \* \* \*

Sec. 40.447–1 [as amended by T.D. 5908, *supra*] *Industry base period rates of return—*\* \* \*

(b) *Industry classification.* For the purpose of sections 442 through 445, and of section 447, the industry classification must be one set forth in section 447(c). Each industry classification set forth in section 447(c) is defined in accordance with the specifications shown in the Standard Industrial Classification Manual prepared by the Division of Statistical Standards of the Bureau of the Budget. The industry classification of the taxpayer is to be determined in accordance with the specifications shown in that manual.

(c) For the purpose of sections 442 through 445, and of section 447, the base period yearly rates of return and the base period rates of return are only those rates of return which are proclaimed by the Secretary. Under section 447(d), tentative base period yearly rates of return and tentative base period rates of return have been proclaimed by the Secretary, and are set forth below. These tentative rates shall be effective until such time as the rates described in section 447(a) and (b) are determined and proclaimed by the Secretary. The rates described in section 447(a) and (b), when proclaimed by the Secretary, shall relate back as though they had been in effect in place of the tentative rates.

(d) Any application of sections 442 through 445 made in accordance with the tentative rates shall be redetermined in accordance with the final rates when proclaimed. The period of limitation prescribed under section 322 and sections 275 and 276 with respect to overpayments of or deficiencies in tax caused by such redetermination shall not begin to run prior to the time that the final rates of return under section 447(a) and (b) are determined and proclaimed.

(e) No redetermination is necessary of any application of section 442 which is properly made in accordance with a tentative base period yearly rate of return for 1946, 1947, or 1948. As to any application of section 442 which is properly made in accordance with a tentative base period yearly rate of return for 1949, and as to any application of sections 442 through 445 which is properly made in accordance with a tentative base period rate of return, no redetermination is necessary in any case where the final rate of return is the same as the tentative rate which was previously effective. The periods of limitation prescribed under section 322 and sections 275 and 276 are not extended, as provided by section 447(d) and by (d) of this section, except in a case where a redetermination is necessary because the applicable final rate is not the same as the tentative rate which was previously effective.

Sec. 40.447–2 [as amended by T.D. 5908, *supra*] *Tentative and final industry base period rates of return.*—The industry classifications set forth in sec-

tion 447(c), and the base period yearly rates of return and the base period rate of return (both the tentative rates described in section 447(d) and the final rates described in section 447(a) and (b)) for each industry classification are as follows: